**UNITED STATES of America, Plaintiff-Appellant,**

v.

**MARUBENI AMERICA CORPORATION and Hitachi Cable, Ltd., Defendants-Appellees.**

**No. 79–1327.**

United States Court of Appeals, Ninth Circuit.

Jan. 10, 1980.

Dean B. Allison, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Edward M. Medvene, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT and WALLACE, Circuit Judges, and HOFFMAN, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge.

The substantive issue is whether the criminal forfeiture provided by the Racketeering and Corrupt Organizations Act (RICO) is limited to interests "in an enterprise." The district court held that it is. We affirm.

### FACTS

Marubeni America Corporation (Marubeni) and Hitachi Cable, Ltd., (Hitachi) are engaged in the production and sales of electrical cable. Marubeni is incorporated in the United States. Hitachi is a Japanese corporation.

Anchorage Telephone Utility (ATU) is an instrumentality of the Municipality of Anchorage, Alaska. Between the spring of

* Of the Eastern District of Virginia.

1970 and September 1978, it invited bids on four contracts to supply it with telephone cable.

The government contends that Forrest Ellis, Marubeni's local representative in Alaska, paid bribes to Richard McBride, an ATU official, for confidential bidding information on the four supply contracts. Marubeni and Hitachi allegedly used this information to underbid their competitors. The government asserts that the defendants lowered their bids by offering some types of cable at depressed prices, thereby making their package bids artificially low.

Based on their bids, Marubeni and Hitachi were awarded large parts of three supply contracts. The aggregate price of these awards was over $8.8 million. After each award, Ellis received cash payments, supposedly commissions, which the government contends he shared as bribe money with McBride.

The government finally alleges that McBride used his position to insure that ATU would not order the types of cable Marubeni and Hitachi bid at depressed prices.

The grand jury charged 63 counts of mail fraud, wire fraud, interstate travel to commit bribery, conspiracy to commit these offenses and racketeering.

This appeal concerns count 63, which charges Marubeni, Hitachi and a corporate officer of each with conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Count 63 demands that Marubeni and Hitachi forfeit to the United States, pursuant to 18 U.S.C. § 1963(a)(1), "any and all sums or amounts paid or payable" to either or both for their performance of the supply contracts.

The trial court read the § 1963(a)(1) forfeiture provision to apply only to interests "in an enterprise" conducted illegally and not to income derived from illegal operation of the enterprise. It consequently dismissed the portion of count 63 demanding forfeiture of contract income.

The proceedings below are suspended at the pre-trial stage while the government takes this appeal. Two questions are presented:

(1) Does this court have jurisdiction to review a trial court's order partially dismissing one count of a criminal indictment; and

(2) Are amounts paid or payable for performance of a contract procured through a pattern of racketeering activity forfeitable interests under RICO.

## I.

### APPELLATE JURISDICTION

■ Appellate jurisdiction is founded on 18 U.S.C. § 3731 which provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Appellees argue the statute does not confer jurisdiction on this court to review an order dismissing part of one count. We disagree.

After reviewing the history of appellate jurisdiction in criminal cases and carefully examining § 3731, the Supreme Court concluded:

[w]hile the language of [§ 3731] is not dispositive, the legislative history makes it clear that Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.

*United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). We find no constitutional impediment to our review.

The Second Circuit, the only other court to face this issue, found jurisdiction. *United States v. Alberti*, 568 F.2d 617 (2d Cir. 1977). The *Alberti* court noted that § 3731 refers to dismissal of an indictment "as to one or more counts," not to dismissal "of one or more counts of an indictment." *Id.*

at 621. The court also pointed out that the practical effect of dismissing a "substantial part" of one count could be the same as dismissing the whole count.[1] It concluded that the Congressional directive to construe the statute liberally required resolving any doubt in favor of finding appellate jurisdiction.

We believe *Alberti* was correctly decided and that § 3731 gives us appellate jurisdiction to review a partial dismissal of one count of an indictment.

## II.

## RICO FORFEITURE

RICO contains a prohibitory section, § 1962, and a penal section, § 1963(a).

Section 1962 prohibits three types of activities: (1) acquiring an interest in an "enterprise" with income derived from a "pattern of racketeering activity;"[2] acquiring an interest in or control of an "enterprise" directly through a "pattern of racketeering activity;"[3] and conducting or participating in the conduct of an "enterprise" through a "pattern of racketeering activity."[4] Marubeni and Hitachi are charged with the third type of activity.

Section 1963(a) provides as penalties for violations of § 1962 a fine, imprisonment,[5] and forfeiture. Dual forfeiture provisions require the criminal to forfeit to the United States

(1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against,

1. The *Alberti* court relied in part on *United States v. Sanabria*, 548 F.2d 1 (1st Cir. 1976), which held that the double jeopardy clause does not bar appellate jurisdiction so long as the part of the count dismissed provides a "discrete basis for the imposition of criminal liability." *Id.* at 5. The Supreme Court reversed. *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). Because *Alberti* involved no double jeopardy problem, the Second Circuit's position that the government may appeal dismissal of a "substantial part" of one count remains valid except when double jeopardy would result.

2. Section 1962(a) provides:
   It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do

not confer, either in law or in fact, the power to elect one or more directors of the issuer. As used in RICO, a
   "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4).
   As used in RICO,
   "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; . . . . 18 U.S.C. § 1961(5).

3. Section 1962(b) provides:
   It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

4. Section 1962(c) provides:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

5. Section 1963(a) provides a maximum fine of $25,000 and a maximum prison sentence of 20 years.

or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a).

■ The government seeks forfeiture of amounts paid or payable to Marubeni and Hitachi under the first provision, § 1963(a)(1).[6] It insists the term "interest" means any form of income or proceeds from a "pattern of racketeering activity." We cannot agree.

### THE RULING BELOW

The district court began with the observation that § 1963(a)(1) calls for forfeiture of interests "acquired or maintained in violation of section 1962 . . . ." The court naturally examined § 1962 to discover what sorts of interest were forfeitable:

> The term "interest" is used in § 1962 in subsections (a) and (b). In both subsections, the statute refers to an interest *in* an enterprise: subsection (a) speaks of the "acquisition of any interest in . . . any enterprise . . . ;" subsection (b) speaks of the acquisition or maintenance of "any interest in . . . any enterprise . . . ." It follows, therefore, that when the forfeiture provision found in § 1963(a)(1) speaks of "any interest . . . acquired or maintained in violation of section 1962 . . . ," the provision refers to interests in an enterprise.

Order Dismissing in Part, Count 63 of the Indictment, pp. 2–3.

The court found its construction supported by a distinction, implicit in the language of RICO, between "income" and "interest." Section 1962(a) makes certain investments of racketeering "income" illegal. When Congress meant "income," the district court noted, it used that term.[7] The implication was compelling that

the term "interest," as it is used in § 1963(a)(1)'s forfeiture provision, means something other than income derived from a pattern of racketeering activity. *Id.* at 3.

The district court concluded:

> The forfeiture claim in the Indictment thus fails since it demands the forfeiture of income Marubeni and Hitachi allegedly received through a pattern of racketeering activity and does not demand the forfeiture of any interests possessed by these corporations in any enterprise.

*Id.* We agree. We believe the district court's position is supported by the statutory language and its legislative history.

### SUBSTANTIVE PROVISIONS OF RICO

The government argues that Congress was not so short-sighted as to attempt to stop criminal infiltration into legitimate institutions by attacking only the actual infiltration. It contends Congress must have sought to attack the potential for infiltration by depriving criminals of the ill-gotten gains they use to acquire interests in legitimate enterprises. The government's position is attractive, but does not square with the statute Congress wrote.

### THE 1% INVESTMENT EXCEPTION

The government contends that racketeering income is forfeitable because it is an "interest acquired" by conducting an enterprise through a pattern of racketeering activity in violation of § 1962(c). Congress dealt expressly with racketeering income in § 1962(a) and we, like the district court, turn to that section for guidance.

Section 1962(a), after stating the general prohibition against investing "income derived, directly or indirectly, from a pattern of racketeering activity," provides an exception to the rule:

---

**6.** The government concedes that § 1963(a)(2) calls only for forfeiture of interest "in an enterprise."

**7.** We note that Congress specifically provided for forfeiture of "profits" obtained from a criminal enterprise in the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 848(a)(2)(A). The Drug Abuse Act was passed by the same Congress in the same month as RICO. Had Congress intended forfeiture of racketeering income, we believe it would have expressly so provided.

A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a).

Congress would not have established rules for the investment of racketeering income, enforced by the penalty of criminal forfeiture, if it intended the government to seize that income regardless of how it was used. Section 1962(a) tells racketeers they may not invest illegal income in enterprises unless they purchase corporate stock without the intent or ability to influence the issuer. Had Congress intended § 1962(a) to produce forfeiture of all racketeering income because it wanted to eliminate the mere possibility of criminal investment in legitimate enterprises, it would not have announced in § 1962(a) that actual investments in corporate stock are permitted. We are convinced that Congress intended to forfeit racketeering income only after it was invested "in an enterprise" in violation of § 1962(a).

### RELATIONSHIP AMONG PROHIBITORY PROVISIONS

■ The government's interpretation of RICO is untenable also because it makes § 1962(c) the only necessary prohibitory provision. The rule is well established that statutes should not be construed to make surplusage of any provision. *Pettis ex rel. United States v. Morrison-Knudsen Co., Inc.*, 577 F.2d 668, 673 (9th Cir. 1978).

If racketeering income were a forfeitable interest, it follows that interests "in an enterprise" acquired with racketeering income would be forfeitable. The test in either case would be whether the interest was "acquired or maintained in violation of section 1962." 18 U.S.C. § 1963(a)(1). An interest is "acquired or maintained" whether it is income derived directly from racketeering or an interest in an enterprise derived indirectly by investing racketeering proceeds. The government's interpretation of RICO thus defeats that 1% investment exception and makes the rest of § 1962(a) surplusage because, under it, § 1962(c) would require forfeiture regardless of how racketeering income was invested.[8]

The government's interpretation similarly makes redundant § 1962(b), which prohibits acquiring or maintaining "any interest in or control of any enterprise" directly through a pattern of racketeering activity. These direct acquisitions are just as much interests "acquired or maintained" in violation of § 1962(c) as racketeering income. Indeed, we perceive no meaningful distinction between monetary income and income in the form of an ownership interest in or control of an enterprise.

We do not believe Congress wrote § 1962(a) and (b) only to make both extraneous by imposing forfeiture for § 1962(c) violations in the manner the government suggests.

### LEGISLATIVE HISTORY

RICO is Title IX of the Organized Crime Control Act of 1970. The Act was introduced as S. 30 on January 15, 1969. That bill was immediately amended to add the

---

**8.** On first impression, § 1962(c) would not completely duplicate § 1962(a) because it requires operation of an enterprise. "Enterprise" would normally imply several racketeers operating together. Section 1962(a) is apparently in contrast because it calls for forfeiture of income improperly invested even though produced by the racketeering activity of an individual acting alone. RICO, however, defines "enterprise" as "an individual or individuals . . ." 18 U.S.C. § 1961(4). Even a lone racketeer would therefore be liable under the government's interpretation of § 1962(c).

RICO title. The amendatory language is the language we construe today.

A different version of RICO, S. 1861, was introduced by the sponsors of S. 30 on April 18, 1969 as a separate piece of legislation.[9] This version plainly called for forfeiture of any interest "in an enterprise:"

> Whoever violates any provision of section 1962 of this chapter shall be fined not more than $10,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States all interest in the enterprise engaged in, or the activities of which affect, interstate or foreign commerce.

S. 1861, 91st Cong., 1st Sess. (1969).

The Justice Department, in a letter from Deputy Attorney General Richard Kleindienst to the Senate Subcommittee in charge of the Organized Crime Control Act, praised the forfeiture provision of S. 1861, saying:

> It is felt that this revival of the concept of forfeiture as a criminal penalty, limited as it is in Section 1963(a) to one's interest in the enterprise which is the subject of the specific offense involved here, and not extending to any other property of the convicted offender, is a matter of Congressional wisdom rather than of Constitutional power.

Measures Relating to Crime, Hearings on S. 30, S. 1861 and related proposals before the Subcomm. on Criminal Laws and Procedures of the Sen. Comm. on the Judiciary, 91st Cong., 1st Sess. 407 (1969).

Although the Kleindienst letter refers specifically to S. 1861, the Senate Report on S. 30 cites it as an accurate interpretation of that bill's RICO forfeiture provision. S.Rep. No. 91–617, 91st Cong., 1st Sess., 78–80 (1969). The report also explains the forfeiture provision in these words:

> Section 1963 provides criminal penalties for the violation of section 1962, above. Subsection (a) provides the remedy of criminal forfeiture. . . . The language is designed to accomplish a forfeiture of any "interest" of any type *in the enterprise* acquired by the defendant or in which the defendant has participated in violation of section 1962.

(Emphasis added.) *Id.* at 160. *Accord, id.* at 34.

The House Report similarly states that RICO calls for forfeiture of interests "in an enterprise." H.R.Rep. No. 91–1549, 91st Cong., 1st Sess. 35 and 57 (1970), reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4010 and 4033.[10] *See also* Organized Crime Control, Hearings on S. 30 and related proposals before the Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 1st Sess. 171 (1969) (testimony by Attorney General Mitchell).

### RICO CONSTRUED

Even were we unconvinced by internal evidence from RICO and by its legislative

---

**9.** The precise relationship between these two bills is not clear. The government contends S. 1861 was the original version of RICO. Senator McClellan, who sponsored S. 30, seems to support this view. "The Organized Crime Act (S. 30) or its Critics: Which Threatens Civil Liberties?," 46 *Notre Dame Lawyer* 55, 145 n.398. The fact that S. 1861 is dated after the S. 30 version of RICO was introduced to Congress indicates the opposite progression. Neither sequence alters the impact of the legislative history, however. The Congressional statements we rely on make it clear that the S. 30 version calls for forfeiture of interests "in an enterprise."

**10.** The last reference to the forfeiture provision in the House Report speaks of forfeitable interests "as broadly described, which are related to the violations." [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4033. This permits but does not prove the government's case. A few other statements in the legislative history also seem to support the government's position that Congress intended forfeiture of all "illgotten gains." *See* S.Rep. No. 91–617, 91st Cong., 1st Sess. 79 (1970); 116 Cong.Rec. 591 (1970) (remarks of Senator McClellan).

These isolated references are simply rhetorical approximations and must be put in perspective. As Senator McClellan, the principal sponsor of the bill stated:

> The concept of criminal forfeiture is an old one in our common law. It was extensively used in England and had some limited use in the Colonies. Title IX, drawing on this early history, would forfeit the illgotten gains of criminals *where they enter or operate an organization* through a pattern of racketeering activity.

116 Cong.Rec. 591–92 (1969) (emphasis added.)

history, we could not accept the government's strained reading when the forfeiture provisions can be read naturally to achieve Congress' stated purpose.

The Senate Report declares:

Title IX recognizes that present efforts to dislodge the forces of organized crime from legitimate fields of endeavor have proven unsuccessful. To remedy this failure, the proposed statute adopts the most direct route open to accomplish the desired objective. *Where an organization is acquired or run by defined racketeering methods, then the persons involved can be legally separated from the organization, either by the criminal law approach of fine, imprisonment and forfeiture,* or through a civil law approach of equitable relief broad enough to do all that is necessary to free the channels of commerce from all illicit activity.

S.Rep. No. 91–617, 91st Cong. 1st Sess. 79 (1969) (emphasis added). Congress plainly imposed criminal forfeiture to separate racketeers from the enterprises they owned, controlled or operated and not to attack racketeering broadsides.[11]

We hold, therefore, that the § 1963(a)(1) forfeiture provision applies to interests "in an enterprise" illegally acquired or maintained. Section 1963(a)(2) completes the attack on racketeering infiltration by insuring that persons who conduct an enterprise illegally will similarly be separated from it, even if the enterprise was legally acquired and maintained.

### GOVERNMENT'S ARGUMENTS

The government raises two arguments against our construction of RICO which merit further attention.

11. We believe anyone who reads the legislative history must be struck by the singlemindedness with which Congress drafted RICO. Congress declared over and over again that its purpose was to rid legitimate organizations of the influence of organized crime. This purpose must be the linchpin of any construction of RICO. The government loses sight of this when it argues that a "loophole" would be created if racketeers were allowed to divest themselves of interests in an enterprise and thereby avoid for-

The government first argues that the absence of the words "in an enterprise" in § 1962(c) demonstrates that Congress intended to include income as a forfeitable interest for violations of that subsection.

We find this unpersuasive for three reasons. First, the government implies that Congress meant to invoke a broader forfeiture penalty by being more specific in its prohibition. Section 1962(c) speaks not of an "interest in an enterprise" but of any person "employed by or associated with any enterprise." The logic of the government's argument, that only the types of interests mentioned in the prohibitive section are subject to forfeiture, would not expand but restrict the penalty for § 1962(c) violations to employment and association with an enterprise.

Second, "employment" and "association" permitting the conduct of or participation in the conduct of an enterprise are interests "in an enterprise." Section 1962(c), like § 1962(a) and (b), thus focuses on racketeering influence "in an enterprise."

The third and conclusive reason we reject this argument is that virtually the same language was used in the S. 1861 version of § 1962(c). S. 1861 plainly limited forfeiture to interests "in an enterprise." The absence of the words "in an enterprise" in the S. 30 version of § 1962(c) cannot, therefore, indicate that Congress intended to forfeit racketeering income.

The government contends, secondly, that forfeiture is the only effective penalty against corporate racketeers. We disagree. If corporate officers are fined, imprisoned and divested of their interests in the enterprise,[12] their successors are unlikely to imitate their misconduct.

feiture. Divestiture is not exploitation of a "loophole." It is the action Congress intended to induce.

12. The government criticizes as "Draconian" divestiture of all interests "in an enterprise" illegally operated. The forfeiture provision could, indeed, be read to produce penalties shockingly disproportionate to the offense. For example, a shopkeeper who over many years and with much honest labor establishes a valuable business could forfeit it all if, in the

A corporation cannot be incarcerated and a $25,000 fine may be insignificant to it but these are not the only available remedies. Civil injunction may be imposed if a court is convinced there is sufficient danger of recidivism.[13] This insures complete reform and, incidentally, could be very costly to the corporation.

### CONCLUSION

We are convinced the trial court correctly interpreted RICO's forfeiture provision. We affirm.

course of his business, he is mixed up in a single fraudulent scheme. *See, e. g., United States v. Parness*, 503 F.2d 430 (2d Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). This example raises issues of statutory construction and constitutional law which we leave for another day. Without establishing the exact scope of divestiture, we note it is an available remedy. *See United States v. Huber*, 603 F. 387, 391 (2d Cir. 1979).

13. 18 U.S.C. § 1964(a). Private treble damage suits are also available. 18 U.S.C. § 1964(c).