UNITED STATES of America, Plaintiff,

v.

Thomas ROMANO and Frank Romano, Defendants.

No. 78-364-Cr-ALH.

United States District Court,
S. D. Florida,
Miami Division.

Oct. 6, 1981.

James Diechert, Sp. Atty., Crim. Div., Dept. of Justice, Atlanta, Ga., for plaintiff.

Marshall G. Curran, Jr., Fort Lauderdale, Fla., Neal Sonnett, Miami, Fla., for defendants.

## FINAL ORDER

HASTINGS, District Judge.

THIS CAUSE came on to be heard on Defendants' Motion for Reconsideration of their Motion in Opposition to Order of Forfeiture.

THOMAS ROMANO and FRANK ROMANO were convicted by a jury of all counts of a twenty-one count Indictment.[1] The Indictment stemmed from the Roma-

---

1. Count one charged the Romanos with violating 18 U.S.C. § 1962(c), with the predicate acts,

mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, being charged in counts 2–5 and

nos' dealings involving the development and construction of The Executive House, a condominium project, located in Inverrary, Florida. Counts one and six charged Defendants with violating the Racketeer Influenced and Corrupt Organizations Act [hereinafter RICO] 18 U.S.C. § 1961 et seq., Pub.L. 91–452, Title IX, § 901(a), Oct. 15, 1970, 84 Stat. 942, more specifically, for violating 18 U.S.C. § 1962(c)[2] by conducting or participating in the conduct of an enterprise (a group of individuals associated in fact) through a pattern of racketeering activity. Count fifteen charged Defendants with violating RICO, 18 U.S.C. § 1962(a)[3] by acquiring an interest in an enterprise (The Sea Inn of Hallandale) with income derived from a pattern of racketeering activity.[4]

Pursuant to § 1963(a), the penal section of RICO, this court was mandated to forfeit:[5]

(1) *any interest acquired* or maintained *in violation of Section 1962,* and

(2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, *any enterprise* which has been established, operated, controlled, conducted, or participated in the conduct of, *in violation of Section 1962.*

18 U.S.C. 1963(a) (emphasis added)

On May 4, 1981 this court entered the Order and Judgment of Forfeiture which is the subject of this motion for reconsideration. Pursuant to that Order Defendants did forfeit:

As to Count 1—The net cash proceeds ($305,939) of the two checks drawn on the account of 4300 Rock Island Road, Inc. which were obtained by Fraud by the Romanos.[6]

---

incorporated by reference in count one. Count six charged the Romanos with violating 18 U.S.C. § 1962(c), with the predicate acts, mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and theft or embezzlement from an employee benefit plan, 18 U.S.C. § 664, being charged in counts 7–14, and incorporated by reference in count 6. Count fifteen charged the Romanos with violating 18 U.S.C. § 1962(a), with the predicate acts, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343 being charged in counts 2–5. Counts 16–21 charged the Romanos individually with various violations of the Internal Revenue Code. 26 U.S.C. 7206(1).

2. 18 U.S.C. § 1962(c) provides that:
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

3. 18 U.S.C. § 1962(a) provides that:
§ 1962. Prohibited activities
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in

acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

4. A portion ($234,061.00) of the income derived from the count one RICO ($540,000.00) was used to acquire, establish, operate, and maintain an interest in The Sea Inn of Hallandale, Inc., which was found to be engaged in and whose activities affect interstate commerce.

5. Forfeiture of property involved in violation of the racketeering statute was mandatory rather than discretionary. *United States v. L'Hoste,* 609 F.2d 796 (5 Cir. 1980).

6. The Government has traced $234,061 of these proceeds which were directly and indirectly used and invested by the defendants to acquire, establish, operate, and maintain an interest in

As to Count 6—The total cash proceeds ($540,000) of the 58 checks which were forged by the Romanos and obtained by fraud.

As to Count 15—All property interests ($316,077) in the Sea Inn of Hallandale, Inc., and real estate located at 906 East Hallandale Beach Boulevard, Hallandale, Florida.[7]

## FORFEITURE UNDER COUNTS ONE AND SIX

The jury, in convicting Defendants of violating § 1962(c) found that the ROMANOS, a group of individuals associated in fact although not a legal entity, conducted their "enterprise" through a pattern of racketeering activity in that they, inter alia, defrauded Martin Kane, I.O.T.A. Industries, Inc. and K.R.R., Inc. (Count 1) and defrauded the Teamster's Pension Fund (Count 6). The proceeds from the two checks acquired by the Count 1 RICO were directly traced to their personal bank accounts. Additionally, it was conclusively proved that the ROMANOS received the proceeds of the 58 checks which form the basis of the Count 6 RICO. Section 1963(a)(1) provides for forfeiture of *any interest acquired* . . . in violation of Section 1962.

This Court feels strongly that the proceeds of all of the checks were "interest acquired" as that phrase is used in § 1963(a)(1), the jury already making the determination that the checks were acquired in violation of § 1962(c). I base my conclusion on a reading of the statute itself, congressional intent and the traditional canons of statutory construction.

The best approach to interpreting a statute is to identify a purpose behind it and interpret the statute's meaning in light of such purpose. *International Telephone and Telegraph Corporation v. American Telephone and Telegraph Company*, 444 F.Supp. 1148 (S.D.N.Y.1978). Additionally, where the statutory language is ambiguous and where a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd result, the court must look beyond the express language in order to effectuate congressional intent. *International Telephone and Telegraph Corporation v. General Telephone & Electronics Corporation*, 518 F.2d 913 (9th Cir. 1975).

The purpose behind the RICO forfeiture section, as succinctly stated in a recently decided Supreme Court case is ". . . to divest the association [the enterprise] of the fruits of its ill-gotten gains." *United States v. Turkette*, —— U.S. ——, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Further, Congress' declared purpose of RICO was "to seek eradication of organized crime in the United States . . . by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Id. at 2531. Given the plain meaning of 1963(a)(1) read in conjunction with 1962(c), which limits its scope, coupled with the stated purpose of severing racketeers from their "ill-gotten gains," forfeiture of the proceeds of the various fraudulently obtained checks would seem to be the proper course of conduct. Other courts have disagreed.

---

The Sea Inn of Hallandale, Inc. This $234,061 is common to *both* Counts One and Fifteen. Accordingly, the forfeiture in Count One should be calculated as follows:

$540,000 defendants' interest in cash proceeds-Count One.

*minus*

$234,061 defendants' interest in The Sea Inn of Hallandale, Inc., *etc.*-Count Fifteen.

---

$305,939-Thus, *the defendants' interest in cash proceeds subject to forfeiture in Count One is $305,939.*

7. The interest subject to forfeiture consists of the $234,061, which the defendants invested in The Sea Inn of Hallandale, Inc. (See Note 1 above); *plus* $82,016 of the gain realized by the sale of the assets of The Sea Inn of Hallandale, Inc. (See proposed findings # 8–10). Thus, *the total amount sought* by the Government *in Count Fifteen consists of a $316,077 interest of the $800,000 Note and Mortgage* which is now held by Louima Ruth Romano. (Hereafter the "Note and Mortgage".) (See proposed findings # 6–11.)

In *United States v. Marubeni America Corporation*, 611 F.2d 763 (9th Cir. 1980), defendants were convicted of conducting the affairs of an enterprise through a pattern of racketeering activity in violation of § 1962(c). The corporate defendant, Marubeni American Corporation (Marubeni) caused bribes to be paid to a local Alaskan official to obtain confidential bidding information on contracts for telephone cable. Marubeni and Hitachi Cable Ltd. (Hitachi) used this information to underbid their competition thereby winning the contracts. Subsequently, with the aid of the bribed Alaskan official, Hitachi and Marubeni sold only higher priced cable. The government sought forfeiture of "any and all sums paid or Payable" to either or both for their performance of the contracts. The issue presented in *Marubeni* was whether those monies were forfeitable interests under RICO.[8] That issue was resolved in the negative. The 9th Circuit, in upholding the District Court's denial of forfeiture held that the term *interest* as it is used in § 1963(a)(1) means something other than income derived from a pattern of racketeering activity. In its reasoning the court relied principally on what it termed the "1% investment Exception" of § 1962(a). § 1962(a) provides in part:

> A purchase of securities on the open market for purposes of investment, and the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

The Court reasoned that since Congress established a specific exemption for the in-vestment of racketeering income in corporate stock, where no control could be exerted over the corporation, they could not have intended the income of the enterprise in and of itself to be forfeited.

> "We are convinced that Congress intended to forfeit racketeering income only after it was invested 'in an enterprise' in violation of § 1962(a)." Id. at p. 767.

Under the holding in *Marubeni*, racketeers will forfeit their interest in the initial enterprise and their interest in the new enterprise which was acquired with the income derived from the first. If, after acquisition of the second enterprise in violation of § 1962(a), excess proceeds remain, those proceeds are considered to be beyond the scope of forfeiture under § 1963. Even a racketeer with a modest Intelligence Quotient will soon figure out that all that needs be done to elude the tentacles of the octopus-like Justice Department with respect to his racketeering income is to invest same in legitimate nonenterprises such as gold certificates, real estate or even government bonds. This simplistic investment strategy would place all of the ill-gotten gains beyond forfeitability, leading to what I perceive to be an absurd result supported by neither the language of the statute or the stated legislative purpose. To extend the "purchase of securities on the open market" exception of § 1962(a) to other types of properties is unwarranted.

In *United States v. Thevis*, 474 F.Supp. 134 (N.D.Ga.1979) defendants were charged with violating § 1962(c). The enterprise alleged was "a group of individuals associated in fact with various corporations to operate a pornography business through certain unlawful means..." Defendants attacked the constitutionality of § 1963 for vagueness and overbreadth. In dismissing the constitutional challenge Judge Harold Murphy discussed the two pronged forfeiture provisions of § 1963(a) in relation to the section that defines its limits, § 1962.

---

**8.** The issue as framed by the *Marubeni* court was "are amounts paid or payable for performance of a contract procured through a pattern of racketeering activity forfeitable interests under RICO." at p. 764.

In essence, Judge Murphy judicially limited the scope of forfeitures under § 1963(a)(1) solely to substantive violations of §§ 1962(a) and 1962(b), ignoring § 1962(c). He reasoned that § 1962(a), which proscribes acquiring an interest in, establishing or operating an enterprise with racketeering income, and § 1962(b) which proscribes acquiring or maintaining any enterprise or control of an enterprise, are compatible with § 1963(a)(1) which would cause forfeiture of those "interests acquired" in violation of § 1962. This Court wholeheartedly agrees that §§ 1962(a) and 1962(b) proscribe acquiring interests in enterprises and when read in conjunction with 1963(a)(1) it is the racketeer's interest in the enterprise that will be forfeited. It would indeed be a "strained construction" of 1963(a)(1) to include the fruits and profits of those enterprises in the forfeiture given a violation of either 1962(a) or 1962(b).

Next, *Thevis'* analysis moves on to the effect of 1963(a)(2) on violations of § 1962. Unfortunately, the issue that was ignored and that this Court views as controlling in the case at bar is the effect of § 1963(a)(1) on a § 1962(c) conviction. The statute provides that § 1963(a)'s scope is directed to all violations of § 1962.[9] Nowhere in the statute or legislative history is it suggested that 1962(c) should not be equally considered. § 1963(a)(1) does not limit itself to violations of § 1962(a) or (b), but rather applies to all violations of § 1962. In light of the apparent void in *Thevis* this Court will discuss what it believes the effect of 1963(a)(1) on a violation of 1962(c) should be.

The proscribed activity in § 1962(c) is not the acquisition of an interest in an enterprise, as is the case with 1962(a) & (b), but rather conducting an *established enterprise*, be it licit or illicit,[10] through a pattern of racketeering activity. Under § 1963(a)(1) the court must forfeit the *interests* acquired as a result of *conducting the enterprise*. Since the enterprise is already in existence

the language of the statute suggests that something other than what already exists should be forfeited. Since § 1962(a) & (b) deal with the acquisition of enterprises which would be subject to forfeiture under 1963(a)(1) & (2), and 1963(a)(2) alone would cause a forfeiture of the 1962(c) enterprise itself, 1963(a)(1) read in conjunction with 1962(c), in light of all the other sections, would seem to work a forfeiture of property other than the enterprise. That *other* property is the *interest acquired* by the enterprise. In this case, the Romanos, a group of individuals associated in fact, acquired interests in cash proceeds, and it is those proceeds that should be subject to forfeiture. The fact that the term interest may indicate a part of a larger whole[11] does not persuade me that the 1963(a)(1) interest applies only to an enterprise, for if it is income that is acquired from the § 1962(c) enterprise then each racketeer will simply forfeit his part of the whole of those acquired proceeds, i. e., each ROMANO brother will forfeit his 50% interest in the cash proceeds.

*Thevis* goes on to discuss the relation § 1963(a)(2) plays in the scheme of RICO forfeitures, holding that § 1963(a)(2) would cause a forfeiture of § 1962(a) & 1962(b) interests. The inquiry does not end there, for at page 143 the Court concludes that § 1963(a)(2) really "complements § 1962(c) in that it requires forfeiture of the defendants' interest in the enterprise whose affairs are conducted in violation of § 1962." Again, this Court agrees that 1963(a)(2) would cause the § 1962(c) enterprise to be forfeited. In fact, as a matter of law, I believe that 1963(a)(2) only operates to the detriment of enterprises. However, § 1963(a)(2) should not be considered to the exclusion of § 1963(a)(1) with respect to RICO (c) violations.

In sum, *Thevis* implicitly holds that forfeiture under § 1963(a)(1) is available only to violations of §§ 1962(a) and 1962(b), and

---

**9.** "(a) Whoever violates any provision of section 1963 of this chapter . . . shall forfeit to the United States. . . . "

18 U.S.C. 1963(a).

**10.** See *United States v. Turkette*, supra.

**11.** See *United States v. Thevis*, supra, at p. 141–142.

that forfeitures under § 1963(a)(2) would apply to §§ 1962(a), 1962(b) and 1963(c). This judicial gerrymandering of the statute, although well reasoned, flies in the face of the express language of the statute. § 1963(a)(1) by its very terms applies to violations of § 1962, not merely §§ 1962(a) and 1962(b). Had Congress intended this result it could have so stated.

Finally, *Thevis* relies on the oft quoted passage coined in *United States v. Meyers*, 432 F.Supp. 456 (W.D.Pa.1977), which at first blush appears to stand for the proposition that a § 1963(a)(1) forfeiture does not include fruits or profits, wherein it was stated that:

> "A strained construction of § 1963 might regard profits or fruits received from the enterprise as available revenue which might be used as funds to be reinvested in the enterprise or otherwise to influence its operation.
>
> However, the more natural interpretation is that an 'interest' is akin to a continuing proprietory right in the nature of a partnership or stock ownership (or holding a debt or claim) rather than mere dividends or distributed profits." [12]

at page 461.

This court feels no strain in including the proceeds of the fraudulently received checks, whether deemed fruits or profits, in the forfeiture judgment. After a close inspection it appears that this passage has been taken out of context by the courts that rely on it. Before finding the "natural interpretation," the *Meyers* Court, in discussing 1963's effect on 1962 stated:

> "Forfeitability extends not only to any 'interest' in the enterprise, but to any 'claim against, or property, or contractual right of any kind' affording a source of influence over the enterprise."

Id. at p. 461.

This phrase closely tracks the language of § 1963(a)(2), leading this Court to conclude that *Meyers* was concerned with the bounds of forfeiture under 1963(a)(2), not 1963(a)(1). In that context I agree that it would indeed be a strained construction of § 1963(a)(2) to include fruits or profits in the forfeiture award. Even in *Marubeni* the government conceded that § 1963(a)(2) applies only to interests in the enterprise.[13] The real strain encountered by this Court has been how to *exclude* fruits or profits derived from a 1962(c) enterprise when sought under 1963(a)(1), notwithstanding *Meyer's* "natural interpretation," which I believe is inapposite to the case at bar.

If the income, proceeds, profits or fruits of the RICO (c) enterprise are not "interests acquired" then what are they? It is the sincere belief of this Court that 1963(a)(1) does and should operate to divest racketeers of the fruits of their 1962(c) enterprise.

Luckily for the ROMANOS, this Court does feel strained when confronted with the possibility of clashing with the time honored notion of stare decisis. For subsequent to the Order of Forfeiture originally entered herein, the Fifth Circuit in deciding a case of first impression in this Circuit held that § 1963 is not to be applied against the fruits and profits obtained from a pattern of racketeering activity. *United States v. Martino*, 648 F.2d 367 (5th Cir. 1981).[14] In so holding the court adopted the holdings in *Marubeni, Thevis,* and *Meyers.* Herein lies the rub.

In *Martino*, the defendants were charged and convicted of conducting the affairs of an enterprise (a group of individuals associated in fact to defraud fire insurers) through a pattern of racketeering activity in violation of § 1962(c). Defendants each received proceeds from insurance policies which were purchased prior to insured structures being torched. The jury re-

---

12. It should be noted that the above quoted passage was obiter dictum, relating to an issue which was rendered moot.

13. See *Marubeni*, supra, at p. 766, n. 6.

14. See also *United States v. Peacock*, slip nos. 79–5238, 80–7087 (5th Cir. August 27, 1981), which summarily reversed the District Court's Order forfeiting profits derived from a § 1962(c) enterprise (arson ring), relying solely on the *Martino* case, supra.

turned verdicts ordering forfeiture of the insurance proceeds collected by the defendants. The government took the position that income or profits from the illegal enterprise were forfeitable under § 1963. Defendants contended that § 1963 only applied to interests in the enterprise. The court defined the issue as:

"Whether the term interest in 18 U.S.C. § 1963(a) includes income or receipts from racketeering activity."

The court, relying on the *Marubeni/Thevis/Meyers* triad, cases relied on heavily by defendants herein held in the negative but in so doing did not distinguish between §§ 1963(a)(1) and § 1963(a)(2). However, since 1963(a)(2) clearly applies only to interests in enterprises this Court finds that the court implicitly ruled on 1963(a)(1)'s effect on 1962. Apparently, in adopting *Thevis'* analysis the Fifth Circuit has ratified the holding that forfeiture via § 1963(a)(1) is not to be applied to § 1962(c). I neither like nor agree with this result for the reasons I have previously expressed, but am duty bound to follow Fifth Circuit precedent. *Martino*, being directly on point with the case at bar, must control. Therefore, my previous Order and Judgment of Forfeiture with respect to Counts One and Six must be vacated and set aside, yielding to the controlling case law.

## FORFEITURE UNDER COUNT FIFTEEN

Through their guilty verdict in Count Fifteen, the jury found that the defendants had received income derived through a pattern of racketeering activity described in Count One, and used and invested this income to acquire, establish, and maintain an interest in an enterprise, The Sea Inn of Hallandale, Inc. The government has established a direct trace of a portion of the funds obtained by the defendants (Count One) to acquire and maintain an interest in The Sea Inn. The ROMANOS' interest in this property is subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(1) and (2). This interest consists of a $316,077 portion of the $800,000 note and mortgage (see Note 7,

supra.) The ROMANOS' interest in The Sea Inn which was derived from racketeering income amounted to 23.4% of its value. Therefore, forfeiting their 23.4% interest in the property would be appropriate, said 23.4% being calculated on the total net worth of the asset, which necessarily includes gains due to appreciation over time ($82,016 represents the ROMANOS' pro rata share of the gain from the sale of the restaurant, plus the original investment of $234,061 equals the $316,077 which is forfeitable under Count Fifteen).

Forfeiture of the ROMANOS' interest in The Sea Inn of Hallandale, Inc. will not be disturbed.

Wherefore, after carefully considering defendants' Motion For Reconsideration, and memoranda submitted, the oral argument of counsel, and the record in this cause, and being otherwise duly advised in the premises, it is

ORDERED AND ADJUDGED that this Court's Order and Judgment of Forfeiture entered on May 4, 1981 is hereby modified as follows:

1. The $422,969.50 judgment in favor of the United States and against THOMAS ROMANO, as recited in paragraph 1, is hereby VACATED and SET ASIDE.

2. The $422,969.50 judgment in favor of the United States and against FRANK ROMANO, as recited in paragraph 2, is hereby VACATED and SET ASIDE.

The Order and Judgment of Forfeiture is affirmed in all other respects.