UNITED STATES of America,
Plaintiff-Appellee,

v.

Ralph GODOY, aka Richard G. Wood,
Defendant-Appellant.

Nos. 79–1788, 80–1600.

United States Court of Appeals,
Ninth Circuit.

No. 79–1788 Argued Sept. 19, 1980 and
No. 80–1600 Argued March 24, 1981.

Both Submitted March 24, 1981.

Decided May 24, 1982.
Rehearing and Rehearing En Banc
Denied July 28, 1982.

S. R. Balash, Jr., Santa Barbara, Cal., for defendant-appellant.

David B. Smith, Crim. Div., Dept. of Justice, Washington, D. C., argued for plaintiff-appellee; William J. Sayers, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Before POOLE, NELSON and NORRIS, Circuit Judges.

NELSON, Circuit Judge:

Ralph Godoy appeals his convictions under 18 U.S.C. § 1962 (1976) (RICO) and 21 U.S.C. § 841(a)(1) (1976) (possession and sale of methaqualone). He also appeals the district court's order forfeiting certain properties pursuant to 18 U.S.C. § 1963 (1976). The Government challenges the district court's denial of its motion to correct the forfeiture order, made pursuant to Fed.

R.Crim.P. 35. This court ordered consolidation of the two appeals.

Godoy was indicted by a federal grand jury on October 3, 1979. The indictment sought forfeiture of six parcels of California real estate under RICO: (1) the Ralph Brothers Market and Pharmacy, (2) an unimproved lot in Ventura County, (3) commercial property in Van Nuys, (4) commercial property in Mission Hills, (5) the Whiskey Creek Nightclub, and (6) residential property in Los Angeles. Shortly after arraignment, the district court issued an order restraining disposition of the properties during litigation, as is provided by 18 U.S.C. §§ 1955(d) and 1963(b) (1976). On this appeal, Godoy concedes that each of these parcels was acquired with the proceeds of his racketeering activity.

On November 19, 1979, Godoy was convicted by a jury on all counts charged in the indictment. The jury also returned a special verdict forfeiting the six properties. Nonetheless, the district court's judgment order forfeited only the last four properties listed above. The court indicated that it would not forfeit the market and pharmacy because Mrs. Godoy had recently given birth to the couple's first child, and it felt that some source of support for the family should be preserved. Godoy immediately brought his appeal; the Government seems initially to have been satisfied with the forfeiture order and did not cross appeal.

Six months later, in June of 1980, Godoy petitioned the district court to remove the restraining order on the properties that had not been forfeited. The Government responded with a motion to correct the forfeiture order pursuant to Fed.R.Crim.P. 35(a). Relying on recent Fifth Circuit authority, *United States v. L'Hoste*, 609 F.2d 796 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980), the Government sought to amend the forfeiture order to include the market and pharmacy. The district court denied the motion and the Government timely appealed that denial.[1]

---

1. We heard argument on Godoy's appeal (No. 79–1788) on September 19, 1980, but deferred submission pending outcome of the appeal in *United States v. Leverage Funding Systems,*

The Government does not challenge the district court's decision against forfeiture of the Ventura property and concedes that the residential property is not subject to forfeiture under our holding in *United States v. Marubeni America Corp.*, 611 F.2d 763 (9th Cir. 1980). Godoy does not challenge the order insofar as it forfeits the Whiskey Creek Nightclub. No question concerning these three properties is before this court.

## I. GODOY'S APPEAL.

### A. *The Validity of the Indictment.*

Godoy seeks reversal of his conviction on the sole ground that his indictment was void. Of the seventeen grand jurors voting the indictment, only ten had attended all the evidentiary sessions. Godoy contends that the remaining seven were not "legally qualified" to vote the return of the indictment because they were not fully informed. He concludes that his indictment was not returned "upon the concurrence of 12 or more jurors," as required by Fed.R.Crim.P. 6(f), and that it was therefore void.

■ Godoy relied on the short-lived decision of the district court in *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645 (9th Cir.), *rev'g* 478 F.Supp. 799 (C.D. Cal.1979), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1980). There, we stated:

> Under the Fifth Amendment and Fed.R. Crim.P. 6(a) and 6(f), an indictment is valid if (1) the grand jury returning the indictment consisted of between 16 and 23 jurors, (2) every grand jury session was attended by at least 16 jurors, and

(3) at least 12 jurors vote to indict. Nothing requires that every juror voting to indict attend every session.

*Id.* at 649. Godoy's indictment satisfied these criteria in all respects and was therefore valid. The conviction is affirmed.

### B. *The Forfeiture.*

Godoy challenges the forfeiture of the Van Nuys and Mission Hills properties he owns. The Van Nuys property includes a building leased to two different businesses: one a camera shop, the other a pharmacy. The Mission Hills property is a corner lot and building leased to six different businesses, including a liquor store, a television repair shop, and a small market.

■ RICO requires forfeiture of "any interest in ... any enterprise" acquired through the investment of "income derived ... from a pattern of racketeering activity." 18 U.S.C. §§ 1962(a), 1963(a).[2] The only issue is whether Godoy's ownership of the two pieces of commercial real estate constitutes an "interest in any enterprise."[3] We hold that it does.

We must examine congressional intent in order to determine the scope of the term enterprise. Both the language and the legislative history of RICO suggest that Congress intended "interest in any enterprise" to include ownership of income-producing commercial real estate. As a start, Congress defined enterprise broadly, including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.

---

*Inc.*, 637 F.2d 645 (9th Cir. 1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). Thereafter, the Government brought its appeal (No. 80–1600). We ordered it consolidated with Godoy's appeal and heard argument on March 24, 1981. The two appeals were submitted that same day.

**2.** It is a violation of § 1962 to invest the gains of racketeering activity in legitimate businesses ("It shall be unlawful for any person who has received any income ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in acquisition of any interest in ... any enterprise which is engaged in, or the activities of which affect,

interstate or foreign commerce." 18 U.S.C. § 1962(a) (1976)). Section 1963(a) requires forfeiture of any interest acquired in violation of § 1962 ("Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, ...." 18 U.S.C. § 1963(a) (1976)). *See Marubeni*, 611 F.2d at 769.

**3.** It is undisputed that Godoy used racketeering income to acquire the properties, and that the tenants are engaged in interstate commerce. *See supra* note 2.

§ 1961(4) (1976). In addition, Congress included a liberal construction clause in the Act. 18 U.S.C. § 1961 note (1976) ("The provisions of [RICO] shall be liberally construed to effectuate its remedial purposes.").

Furthermore, Congress was aware that organized crime had invested extensively in real estate. In its report, the Senate Committee on the Judiciary listed "real estate" among the many industries invaded by organized crime. S.Rep.No. 617, 91st Cong., 1st Sess. 76–77 (1969). That report also referred to an earlier Senate report which noted organized crime ownership of large amounts of real estate, including commercial rental property. *Id.* at 77; S.Rep.No. 307, 82d Cong., 1st Sess. 34 (1951) (Report of the Special Committee to Investigate Organized Crime in Interstate Commerce). Given this awareness, if Congress did not wish the RICO forfeiture provisions to apply to ownership of commercial real estate, we would expect specific statutory exclusion of this type of investment.[4]

Godoy's only argument rests on our decision in *United States v. Marubeni America Corp.*, 611 F.2d 763 (9th Cir. 1980). There the Government sought forfeiture of the *uninvested* gains from the defendant's racketeering. We denied the request because such proceeds have to be invested in an enterprise before they can be forfeited. *Id.* at 767. Thus, we had no occasion to interpret the meaning of "interests in any enterprise," the issue now before us.

We conclude that the district court correctly ordered the forfeiture of Godoy's interests in the Van Nuys and Mission Hills properties.[5]

## II. THE GOVERNMENT'S APPEAL.

The Government appeals the district court's denial of its Rule 35 motion to correct the forfeiture order as an illegal sentence. Godoy challenges this court's jurisdiction to entertain the appeal.

The Government asserts jurisdiction under 18 U.S.C. § 3731 (1976). By enacting that statute, "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649 (1977); *United States v. Hetrick*, 644 F.2d 752, 755 (9th Cir. 1981). In *Hetrick*, this court held that the Government may appeal, pursuant to § 3731, a district court order granting a Rule 35 motion for reduction of sentence. We see no reason to treat differently an order on a Rule 35 motion for correction of an illegal sentence. Although the Government in this case seeks to impose on Godoy a more onerous condition than that originally imposed by the district court, reversal of the district court's order would simply have the effect of reinstating the jury's special verdict. Hence, the double jeopardy clause would not be offended. *See United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). We hold that this court has jurisdiction to review the district court's order.[6]

The Government contends that the district court's forfeiture order was an illegal sentence because it did not include the mar-

---

**4.** Congress did specifically exclude another type of investment that appeared to be investment in an enterprise. *See* 18 U.S.C. § 1962(a) (1976) (excluding from forfeiture purchase on the open market of less than one percent of securities issued by a publicly held corporation).

**5.** The dissenting opinion labels this result an anomaly because "all income except that which is kept in a mattress would be forfeitable." *Post*, at 89, (Poole, J., dissenting). We disagree with this characterization but, in any event, it is for Congress, not the courts, to repair a confused statutory scheme.

**6.** Godoy asserts that the Government's appeal is not timely because its appropriate appeal was from the forfeiture order. However, neither Fed.R.App.P. 4(b) nor any other authority of which we are aware precludes a party from appealing a final order on a postjudgment motion merely because that party has not appealed the initial judgment. In addition, we note that Fed.R.Crim.P. 35 permits a motion to correct an illegal sentence at any time. Hence, late as it was, the Government's postjudgment motion was timely.

ket property; and that the jury's special verdict of forfeiture obliged the court to forfeit that property. Thus, the Government urges this court to adopt the position taken by the Fifth Circuit in *United States v. L'Hoste*, 609 F.2d 796 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

■ In *L'Hoste*, the defendant was convicted under RICO and the Government sought forfeiture of his interest in R. J. L'Hoste & Company. As in this case, the district court declined to order forfeiture out of concern for the interests of the defendant's wife. After exhaustive analysis, which we need not duplicate here, the Fifth Circuit held that the forfeiture provisions of § 1963(a) are mandatory, leaving no discretion in the district court. We find the reasoning of the Fifth Circuit compelling and adopt it as our own. 609 F.2d 809–13. Upon the jury's determination that Godoy had violated § 1962, and that his interest in the market had been acquired or maintained in violation of that section, the forfeiture provisions of § 1963(a) were triggered and the district court was obliged to order forfeiture of the market.

■ In response to the Government's Rule 35 motion, the district court asserted that it would be justified in setting aside the jury's special verdict of forfeiture. We need not address the merits of this position because examination of the record indicates that no such action was ever taken. Moreover, at the time that the court considered setting aside the jury verdict, such an action would have been untimely under Fed. R.Crim.P. 29(c). That rule allows the court to enter judgment of acquittal upon a motion made within seven days of the verdict. The court here would have been acting more than eight months after the verdict. Nothing had been done during that time by either the parties or the court to preserve the matter for such late action. Plainly, Rule 29(c) prevented entry in August of an order setting aside the jury verdict.

It therefore appears that the district court was without power to decline to order forfeiture of the market. Insofar as it failed to order such forfeiture, the district court's judgment was an illegal sentence and should have been corrected upon the Government's motion. We therefore reverse the court's denial of the Rule 35 motion.

Godoy's conviction is affirmed. The case is remanded for actions consistent with this opinion and for such further action as may be necessary under § 1963(b) and (c).

POOLE, Circuit Judge, concurring and dissenting:

I concur in parts IA and II of the majority opinion, but not in part IB, because I conclude that the majority's holding affirming the forfeiture of Godoy's commercial property at Van Nuys and Mission Hills is inconsistent with this court's opinion in *United States v. Marubeni America Corp.*, 611 F.2d 763 (9th Cir. 1980).

In *Marubeni*, we held that Congress did not intend to provide for forfeiture of all income from racketeering activities when it enacted RICO. Rather, Congress' forfeiture scheme is as follows:

[T]he § 1963(a)(1) forfeiture provision applies to interests "in an enterprise" illegally acquired or maintained. Section 1963(a)(2) completes the attack on racketeering infiltration by insuring that persons who conduct an enterprise illegally will similarly be separated from it, even if the enterprise was legally acquired and maintained.

*Id.* at 769. Thus, the fact that Godoy acquired property with income from racketeering activity did not by itself warrant forfeiture of that property. Godoy's property interests were not properly forfeited unless they could fairly be characterized as interests in an "enterprise."

At least some of these properties housed active businesses. However, the majority does not suggest that those tenants are involved with Godoy in a RICO "enterprise" since Godoy was not associated with them in any way. Neither does the opinion imply that Godoy's property interests afforded him a "source of influence over" the tenant

businesses. *See* 18 U.S.C. § 1963(a)(2). It is quite clear that Godoy had no relationship with any of the businesses conducted on his properties other than that of landlord, and that that relationship afforded him no influence over them.

Instead, the majority concludes that the enterprise here is simply the aggregate of Godoy's investment activities. In particular, it finds that since Godoy took income derived from racketeering activity and invested it in the purchase of real property, the users (lessees) of which paid him income (rent), he is engaged in the "enterprise" of real estate investment, in violation of § 1962(a), and that the property he acquired is therefore subject to forfeiture under § 1962(a)(1) as an "interest ... acquired or maintained in violation of section 1962."

Yet the majority's position that mere purchase of real estate using racketeering income constitutes an enterprise effectively nullifies the holding of *Marubeni.* It creates the anomaly that while income from racketeering activity would not itself be subject to forfeiture, any assets or income traceable to that income would be so subject. In effect, all income except that which is kept in a mattress would be forfeitable.

The majority opinion is also inconsistent with other explicit provisions of RICO itself. For example, § 1962(a) specifically states:

A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or fact, the power to elect one or more directors of the issuer.

In *Marubeni,* we stated:

Congress would not have established rules for the investment of racketeering income, enforced by the penalty of criminal forfeiture, if it intended the government to seize that income regardless of how it was used.

611 F.2d at 767. Likewise, Congress would not have established rules for the investment of racketeering income if it intended by use of the term "enterprise" to comprehend that very activity and thereby to subject to forfeiture the investments made. This was not mere solicitude for the stock market; it was recognition that invested income may generate profit without creating an "enterprise," especially where the investor has no input into the conduct or management of the business.[1]

This is not to suggest that the activity of investment in real estate may never constitute an enterprise within the meaning of RICO. An owner or lessor may have such a relationship to the business carried on as to assume the character of an ongoing business concern. However, the evidence presented in this case shows nothing more than an ordinary at arm's length lessor-lessee relationship and as such was insufficient to support a finding that Godoy was such an investor. Nor did Godoy's ownership constitute part of an ongoing real estate development scheme. Thus the dangers identified by Congress—use of coercive tactics and corruption of local officials to gain an unfair competitive advantage[2]—are

---

[1] It seems apparent that the stock investment exception was intended to provide clear guidelines for investments in what are concededly enterprises, rather than, as the majority suggests representing the exclusive means of investing racketeering income. Nothing in the legislative history indicates a Congressional motivation thus to funnel racketeering acquired funds into the stock market.

[2] *See Organized Crime Control: Hearings Before Subcommittee No. 5 of the House Committee of the Judiciary,* 91st Cong., 2d Sess. 89 (1970) (statement of Senator McClellan); *Id.* at 433 (statement of Aaron M. Kohn, United

largely inapplicable to this type of passive investment.

Indeed, Godoy's involvement with the commercial property is not unlike his position vis-a-vis the residential property which he also owned and rented and which the government conceded was not an enterprise under *Marubeni.* The residential property constituted "income-producing real estate" under the majority's definition of an "enterprise." And although it was not "commercial real estate" Godoy had no interest in the businesses operating on his property other than the collection of rent. Thus, since the focus here is on whether Godoy's ownership of the *property* constituted an enterprise, he occupied the same position for both the commercial and residential real estate.

Accordingly, I would reverse the order insofar as it forfeits Godoy's commercial properties in Van Nuys and Mission Hills.

States Chamber of Commerce); S.Rep.No.91–  617, 91st Cong., 1st Sess. 77 (1969).