## UNITED STATES v. ELIOTT HALL FARM et al.

### Misc. 43–A.

District Court, D. New Jersey.
Nov. 21, 1941.

236

Charles M. Phillips, U. S. Atty., by Charles A. Stanziale, Asst. U. S. Atty., both of Trenton, N. J., for the Government.

Lloyd C. Riddle, of Jersey City, N.J., for claimant.

WALKER, District Judge.

The facts are:[1]

1. On and prior to May 21, 1940, Stephen E. Hall was the owner in fee simple of a 92 acre farm[2] located on the northerly side of a public road leading from New Bedford to Allaire, Wall Township, Monmouth County, New Jersey, together with the buildings thereon, consisting of a dwelling house, dairy barn, barn, machine shed, two silos, pump and milk house, etc. A private lane from 1200 to 1300 feet in length leads from the highway to the barnyard and buildings and crosses a small brook about one-half way from the main entrance. This lane is fenced and along it is a line of poles with wires for the transmission of electric current for the premises. Arriving in the barnyard, the residence is to the east or right and separated from the other buildings by a fence and the yard thereof must be entered through a gate.

2. On the south side of the public road leading from New Bedford to Allaire, Wall Township, Monmouth County, New Jersey, and about 400 feet westward from the entrance to the farm described in paragraph 1, were two bungalows owned by Mr. Hall and he resided in the most easterly one. The bungalow occupied by Mr. Hall was approximately 1,300 to 1,400 feet south of the shed attached to the horse barn and in which shed the still was located.

3. On or about April 6, 1940, a party by the name of Marsallo rented the horse barn and the shed attached thereto for $20 a month. He was in possession on May 21, 1940.

4. From May 18, 1940, to May 21, 1940, agents of the District Supervisor of the Alcohol Tax Unit, Bureau of Internal Revenue had the farm and more particularly the horse barn and the shed attached thereto under observation.

5. On May 19, 1940, the agents were on property adjoining the farm and they saw men about the farm and more particularly in the vicinity of the shed where the still was subsequently found, and through an open door leading into the said shed, they saw a portion of a still and some part of the vats and they smelled fermenting mash. On May 21, 1940, the agents were on property adjoining the Eliott Hall Farm and they saw a man standing in the doorway which led into the shed where the still was subsequently found and beyond him they could see something resembling a fermenter,[3] and they smelled the odor of hot fermenting mash.

6. On May 21, 1940, the said agents entered upon the farm and they entered the shed attached to the horse barn, where they found a distillery in operation, and they seized among other things, a 24 inch copper column, a 300 gallon still, a 75 horse-power steam boiler, a steam pump, 7 mash vats some 15 feet in diameter, approximately 30,000 gallons of mash and 180 gallons of finished alcohol.

7. An electric line supplied power to the electric motors used in connection with the still and to the lights in the vicinity of said still. It ran from said electric motors and lights out of the shed to the dairy barn and from there to the residence. An electric alarm system was also found, the bell was in the shed attached to the horse barn and the string for sounding the alarm was in the barn.

8. There was a pipe line for water running diagonally from a part of the still across the lane to a brook about 750 feet away.

---

[1] Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c.

[2] Hereinafter identified as the Eliott Hall Farm.

[3] The term given to a fermenting-vat.

9. On May 21, 1940, the business of a distiller was being engaged in on the premises in question.

10. The seizure of the property was made without a search warrant.

11. Stephen E. Hall knowingly suffered or permitted the business of a distillery to be carried on upon his property.

12. On May 27, 1940, the government filed a libel in rem against the entire premises and on May 28, 1940, a monition returnable on June 21, 1940, was issued and all the property mentioned in the libel was attached by the United States Marshal.

13. On June 11, 1940, Stephen E. Hall filed his claim to the real estate only, and on June 15, 1940, his answer wherein he denied he knowingly suffered or permitted or connived in the violation charged, and further set up that his lands were not legally seized.

14. Before trial an amended libel was filed wherein the number of acres of land to be forfeited was reduced to approximately 25.16 acres. This acreage includes the lane to the farmhouse, the main farmhouse, the windmill, the milk shed, the dairy barn, two silos, the barn and a shed together with a small building occupied by a helper on the farm.

15. On October 22, 1940, Stephen E. Hall died. His death was suggested upon the record and Lloyd C. Riddle, executor and trustee of his last will and testament was substituted.

## Discussion

It is argued that the forfeiture proceedings in the case at bar are criminal in nature, therefore, personal, and because they have been brought under a penal statute they abated and terminated with the death of Mr. Hall.

With but one exception all of the cases cited by the claimant in support of this contention deal with purely personal actions involving penalties against certain persons for certain illegal acts and do not involve forfeitures of property. Ex parte Schreiber and others [4] was a suit for penalties for infringement of a copyright, and the court held that the death of the party abated the action. United States v. Dunne[5] involved a criminal action in which the defendant was fined after a conviction. It was held that the entire sentence, including the fine, was abated by death. Fithian et al. v. St. Louis & S. F. Ry. Co.,[6] involved a cause of action for injuries resulting in death. United States v. Riley,[7] involved an action for the forfeiture of the value of goods which had been smuggled into the country under a penal statute and was not a proceeding to forfeit the goods themselves. United Copper Securities Co. v. Amalgamated Copper Co., et al.[8] and Caillouet et al. v. American Sugar Refining Co., et al.[9] were actions for three-fold damages under the Antitrust Act, 15 U.S.C.A. § 15.

■ Boyd et al., v. United States,[10] is the only case that bears on the issue. It deals with the seizure for forfeiture of certain imported goods for alleged failure to properly declare the same. The claimant was compelled by the lower court to produce certain of his own records which were used to obtain the forfeiture. The court held that the forfeiture proceedings under the particular statute involved were criminal in nature, that if an indictment had been presented against the claimant, upon conviction, the forfeiture could have been included in the judgment. The court thereupon set aside the forfeiture. The distinction that if an indictment had been presented against the claimant, the forfeiture could have been included in the conviction in the criminal case is extremely important and must be kept in mind, for this clearly made the proceedings criminal in nature and is entirely different from forfeiture proceedings under statutes where there must be a separate civil suit in rem in order to forfeit the res. This was recognized by the Supreme Court in Thomas S. Dobbins v. United States,[11] in which a forfeiture was obtained for failure to keep proper records at a distillery. In said case the court referred to matters where the judgment of forfeiture necessarily carried with it and as a part of the sentence, a conviction and judgment against the person for the crime committed, thereby making the proceeding criminal in character, but where the information in a case does not involve the

---

[4] 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65.

[5] 9 Cir., 173 F. 254, 19 Ann.Cas. 1145.

[6] 8 Cir., 188 F. 842.

[7] D.C., 104 F. 275.

[8] 2 Cir., 232 F. 574.

[9] D.C., 250 F. 639.

[10] 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

[11] 96 U.S. 395, 24 L.Ed. 637.

**238**

personal conviction of the wrongdoer for the offense charged, the remedy of forfeiture claimed is plainly one of a civil nature as the conviction of the wrongdoer must be obtained, if at all, in another and wholly independent proceeding. The Supreme Court repeated what Judge Story said about forfeitures not attaching at common law in many cases of felony where the proceeding was in rem, until the offender was convicted, and that said rule was never applied to seizures and forfeitures created by statute in rem cognizable on the revenue side of the Exchequer Court for the reason that the thing in such a case is primarily considered as the offender, or rather that the offense is attached primarily to the thing whether the offense be malum prohibitum or malum in se.

■ It has been held directly by the Supreme Court that: "A forfeiture proceeding under Rev.St. § 3257 or § 3281[12] is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient."[13]

■ The forfeiture which the government seeks to establish in this matter is not personal. It does not depend on the conviction of Stephen E. Hall or any other person and the proceedings do not abate by reason of the death of Stephen E. Hall.

The evidence offered by the government and uncontradicted by the claimant discloses that on May 18, 1940, agents of the Alcohol Tax Unit, Bureau of Internal Revenue placed themselves in the woods directly behind the rye field on the Eliott Hall Farm and from the place selected they saw activity about the shed attached to the horse barn, and they smelled the odor of mash.

On May 19, 1940, from property to the west of the rye field the agents were able to see men moving about the farm and through an open doorway leading into the shed attached to the horse barn they saw part of a still and they smelled the odor of mash. On May 21, 1940, from the same property they saw a man in the doorway of the shed attached to the horse barn and through the doorway they could see something■ resembling a fermenter, and they smelled the odor of hot fermenting mash.

■ The man in the doorway was the first person they had seen in the shed where the law was being violated, and in an attempt to arrest him they entered upon the Eliott Hall Farm from different directions. When the agents arrived at the shed he had disappeared and could not be found. The attempt to arrest said man even though it did not meet with success because he escaped, is sufficient to validate the search. If they had succeeded in arresting him the search could have been made at the time of the arrest and as an incident thereto.[14] The fact that he eluded arrest should not make the seizure illegal and a violation of the Fourth Amendment to the Constitution of these United States.

■ The observations which the agents made on May 19 and 21, 1940, and the fact that they saw part of a still, vats and smelled the odor of hot fermenting mash was sufficient to justify reasonably prudent persons in believing that a crime was being committed in and upon the Eliott Hall Farm and to establish probable cause for the action taken.[15]

■■ In ruling on the legality of the search the court recognizes the right in Mr. Hall as owner to question same. While the protection granted by the Fourth Amendment to the Constitution is purely

[12] 26 U.S.C.A. Int.Rev.Code, §§ 2806, 2833. Section 2833 is derived from R.S. § 3281, which was in nature of a revision of Act July 20, 1868, c. 186, § 44, 15 Stat. 142, as amended by Acts Feb. 8, 1875, c. 36, § 16, 18 Stat. 310; June 26, 1936, c. 830, § 314(b), Tit. III, 49 Stat. 1949.

[13] Waterloo Distilling Corporation et al. v. United States, 282 U.S. 577, at page 581, 51 S.Ct. 282, at page 284, 75 L.Ed. 558. See, also, J. W. Goldsmith Jr.-Grant Co. v. United States, 254 U. S. 505, 41 S.Ct. 189, 65 L.Ed. 376; Nor-

briga v. United States, 1 Cir., 55 F.2d 146; United States v. Stowell, 133 U. S. 1, 10 S.Ct. 244, 33 L.Ed. 555; United States v. Five Boxes of Asafœtida, etc., D.C., 181 F. 561; United States v. One 1940 Packard Coupe, D.C., 36 F.Supp. 788.

[14] See: 34 Harvard Law Review 361 at 377. See also, Kelley v. United States, 8 Cir., 61 F.2d 843, 86 A.L.R. 338; Rocchia v. United States, 9 Cir., 78 F.2d 966.

[15] Whitcombe et al. v. United States, 3 Cir., 90 F.2d 290.

personal and only the person whose constitutional rights have been violated can complain, Mr. Hall, as owner, had a sufficient proprietary interest upon which to question the search and seizure. [16]

 According to Mr. Shubert, the manager of Eliott Hall Farm, Mr. Hall was the one who told him to move the machinery out of the shed attached to the horse barn because he had rented it for storage purposes, and later when he saw a hole 40 feet from the west of the cow barn and about 100 feet from the pump house, he reported this to Mr. Hall, who admitted that he knew all about it, and when he smelled an odor which persisted over many days and was more noticeable on rainy days, and commented thereon to Mr. Hall, Mr. Hall replied "I'll bet it don't stink as bad as that old apple used to." This evidence has not been successfully challenged nor discredited and it establishes that Mr. Hall knowingly suffered or permitted the business of a distillery to be carried on upon his property.

The only question which remains is: How much of the Eliott Hall Farm has the government connected with the distillery operation? [17] The government has established that the private lane from 1,200 to 1,300 feet in length leading from the public road to the barnyard was used for ingress and egress to the shed where the still was located, that said shed and the horse barn to which it was attached and the sheds at the westerly end of said horse barn and running therefrom in a southerly direction housed the still and parts and things used in connection with the still and the pipe line for water ran from said sheds and barn approximately 750 feet to a point in the brook for the purposes of supplying water to the still and the aforesaid lane, sheds, barn and land adjacent thereto, and land over which and through which the pipe line travelled were connected with or related to the distillery operation.

### Conclusion

A distillery was being operated on the Eliott Hall Farm on May 21, 1940. Proof that the required bond had been given

was not offered during the trial and it is found that Section 2833[18] was being violated on the date and at the time and place in question.

The private lane (Exhibits C–1, C–2, and C–3), barn (Exhibit C–5), shed attached to the barn (Exhibit C–9), sheds attached to the barn at the westerly end thereof and running southerly therefrom (Exhibit C–6), and land adjacent thereto, and land over which and through which the pipe line for water travelled from the sheds shown in Exhibit C–6 to a point approximately 750 feet therefrom, are forfeited in accordance with the prayer in the amended libel.

---

[16] See Mello et al. v. United States, 3 Cir., 66 F.2d 135.

[17] United States v. About 151.682 Acres of Land in McHenry County, Ill., 7 Cir., 99 F.2d 716.

[18] 26 U.S.C.A. Int.Rev.Code § 2833.