UNITED STATES of America, Plaintiff-Appellee,

v.

Nabil S. AL MUDARRIS, and Salah S. Al Mudarris, Defendants-Appellants.

Nos. 82–1332, 82–1333.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1982.

Decided Jan. 6, 1983.

Joseph Francis Walsh, Beverly Hills, Cal., for Nabil S. Al Mudarris.

Donald B. Marks, Marks & Brooklier, Beverly Hills, Cal., for Salah S. Al Mudarris.

D. Blair Watson, Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT, KENNEDY, and BOO-CHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellants seek to have us overturn their conviction for mail fraud against a medical insurance carrier. They contend that prosecutorial misconduct before the grand jury necessitated dismissal of their indictment.

## I. FACTS

Appellants Nabil and Salah Al Mudarris are brothers. Salah had medical insurance, Nabil did not.

On Christmas Eve 1974 a man later identified as Salah, but using a false name, delivered a severely burned man to the hospital. The patient, later identified as Nabil, was admitted as Salah.

Nabil's wife later testified that Salah told her this was done for insurance purposes. Salah signed insurance claims for the patient's treatment as though Salah himself had received it. These claims, which amounted to more than $25,000, were processed by mail.

The government sought a mail fraud indictment against appellants and a treating doctor who knew them before the injury. Grand juries heard testimony but their terms expired before an indictment was returned. The indicting grand jury, in one afternoon, heard only a summary witness, an agent of the Bureau of Alcohol, Tobacco and Firearms (BATF), and returned the indictment.

That morning, this grand jury had heard summary testimony by the same witness on a different indictment, sought against appellants' brother Anthony Al Mudarris and others. It concerned four arsons and charged conspiracy, racketeering, and mail fraud for fire insurance proceeds. Though the morning indictment did not charge appellants, the prosecutors believed they were setting fires for the arson conspirators when the burns precipitating the medical insurance fraud were incurred.

Alleging prosecutorial misconduct before the grand jury, appellants moved to dismiss their indictment. The trial judge denied the motion and convicted them after a bench trial on stipulated facts. Appellants, relying on *United States v. Samango,* 607 F.2d 877, 884 (9th Cir.1979), argue that the cumulative effect of the prosecutors' numerous alleged improprieties before the grand jury requires reversal.

## II. JUDICIAL REVIEW OF GRAND JURY PROCEEDINGS

The Constitution provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury." U.S. Const. amend. V. A grand jury has the task of determining whether there is probable cause to believe a crime has been committed.

Its functions are related to those of the judicial branch and those of the prosecutorial arm of the executive branch. But the fifth amendment gives this preconstitutional institution independent stature. *See United States v. Chanen,* 549 F.2d 1306, 1312 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). Courts therefore are reluctant to intrude in its proceedings.

Judicial oversight implicates the balance of powers between the judicial and executive branches as well. The prosecutor

properly has wide discretion in grand jury proceedings. *United States v. Kaplan,* 554 F.2d 958, 970 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

But this prosecutorial discretion is not boundless. The Framers, considering the grand jury an institution central to the protection of our basic liberties, interposed it in the law enforcement process to safeguard citizens against governmental oppression. *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974).

■ The prosecutor may not circumvent this safeguard by overreaching conduct that deprives the grand jury of autonomous and unbiased judgment.

If the grand jury is to accomplish either of its functions, independent determination of probable cause that a crime has been committed and protection of citizens against unfounded prosecutions, limits must be set on the manipulation of grand juries by overzealous prosecutors.

*United States v. Samango, supra,* 607 F.2d at 882. Prosecutors share with courts the duty not to interfere with the grand jury's function. "Under the constitutional scheme, the grand jury is not and should not be captive to any of the three branches." *United States v. Chanen, supra,* 549 F.2d at 1312.

■ Courts therefore will act when the grand jury's function has been so subverted as to compromise the integrity of the judicial process. *United States v. Everett,* 692 F.2d 596, 601 (9th Cir.1982). They may dismiss an indictment as an exercise of their inherent supervisory power, *United States v. Samango, supra,* at 884, or to protect a defendant's due process rights, *United States v. Basurto,* 497 F.2d 781, 785 (9th Cir.1974).

■ They will not invoke this harsh remedy lightly. One challenging an indictment carries a difficult burden. He must demonstrate that the prosecutor engaged in flagrant misconduct that deceived the grand jury or significantly impaired its ability to exercise independent judgment. *United*

*States v. Wright,* 667 F.2d 793, 796 (9th Cir.1982). Appellants argue that prosecutorial conduct in this case fell to that level.

## III. SUMMARY WITNESS PROCEDURE

■ Appellants contend that the government presented its case in an unacceptable fashion. It used only the summary hearsay testimony of a BATF agent. It did not call available witnesses who testified before previous grand juries and it allegedly gave the indicting grand jury the transcribed testimony of only some previous witnesses. Appellants argue that this prevented the grand jury from evaluating witnesses' credibility and from hearing possible exculpatory testimony.

■ This argument must fail. An appellate court may not attack an indictment on the ground of incompetent or inadequate evidence. *United States v. Vallez,* 653 F.2d 403, 406 (9th Cir.1981), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1982).

■ It is well settled that an indictment may be based solely on hearsay. *See United States v. Castillo,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). In this circuit that rule applies even if the government could have produced percipient witnesses. *United States v. Seifert,* 648 F.2d 557, 564 (9th Cir.1980). We have explicitly rejected the Second Circuit's rule authorizing dismissal of indictments exclusively based on hearsay when better evidence is available. *United States v. Samango, supra,* 607 F.2d at 880 n. 6.

■ The prosecutor has no duty to present to the grand jury all matters bearing on the credibility of witnesses or any exculpatory evidence. *United States v. Tham,* 665 F.2d 855, 862 (9th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982); *United States v. Trass,* 644 F.2d 791, 796–97 (9th Cir.1981).

The *Samango* court drew the line at the prosecutor's failure to alert the grand jury to latent credibility problems of a suggestible, drug-addicted, and possibly biased informant's transcribed key testimony. 607 F.2d at 883. In the present case, however,

absent witnesses were not of this character. Most of them were hospital and insurance personnel and handwriting experts. Apparently the only one with credibility problems was the codefendant and he, according to appellants, would have been an exculpatory witness.

The unsubmitted transcripts were of one hospital worker's testimony, which was cumulative, and that of persons who allegedly provided an alibi for the fires, which was not relevant to the indictment. Though it would be better practice to provide the grand jury with transcripts of all former testimony they hear summarized, this omission was not forbidden.

This summary procedure, standing alone, was not improper under the generous standards this circuit has set.

## IV. PREJUDICIAL REMARKS

Appellants argue that the prosecutor and summary witness needlessly injected irrelevant subject matter that was highly prejudicial and sometimes misleading. The government representatives persistently asserted that the burn injuries were incurred setting an arson fire and that appellants were participants in the arson conspiracy.[1] On two occasions they referred to news stories, including some about arsons resulting in deaths.

██ The first reference to news stories was blameless. It occurred when both indictments were introduced, during instructions on confidentiality and juror excusal in view of media interest in the other indictment. The second reference, mentioning arson deaths, appears more inept than calculated. When the prosecutor answered a juror's question about the delay in seeking

this indictment, the BATF witness added that fatal arsons such as those the jurors may have read about received priority. Though they might have inferred that appellants were responsible for deaths, he did not say or mean this.

As for the rest, the government responds that "other crimes" evidence is relevant and acceptable to prove intent. *Cf.* Fed.R.Evid. 404(b). Apparently it is referring to appellants' motive to confuse identities.

This argument is specious. Two arsonists reporting to a hospital after setting a fire might have a motive to conceal the identity of the burn victim, but not to attribute to him the identity of the unburned arsonist.

We recognize that the grand jury is an investigatory body. But here, though the prosecutors were clearly eager to bring arson home to appellants, they had already decided not to seek an arson indictment, as one admitted when a grand juror complained about the lack of direct evidence that appellants set the Christmas Eve fires.

██ The government had a perfectly coherent and convincing case for appellants' mail fraud without connecting this indictment to arson. That information served no purpose except to predispose the grand jury against them.

██ A prosecutor may not, by making prejudicial remarks to sway the grand jury, deny an accused his right to have his indictment tested by its independent judgment. *United States v. Samango, supra,* 607 F.2d at 884. However, it takes substantial proof of grand jury bias to overturn an indictment. *United States v. Polizzi,* 500 F.2d 856, 888 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 803, 42 L.Ed.2d 820 (1975).

---

1. At oral argument, the prosecutor who presented this evidence to the grand jury told us:

> The first matter of the fires comes in as a grand juror asks the summary witness where the brothers were at the time of the injury .... And the agent answered, our information is they were setting the fires. Now immediately after that I explained to the grand jury that it was irrelevant how the injuries occurred.... So that at the outset they

were informed that it didn't matter about the fires, that this was not an arson case.

This is simply not so. The prosecutor *began* his grand jury presentation by systematically eliciting extensive allegations that appellants were long-term participants in the arson conspiracy and that a particular arson fire caused the burns. He did not explain to the grand jury that all this was irrelevant until a grand juror's questions, at the *end* of his presentation, forced him to.

■ In this case the grand jury had credible and relevant evidence that was virtually conclusive of guilt. The arson allegations could not have prejudiced appellants in any practical sense. *See United States v. Scheufler,* 599 F.2d 893, 895 (9th Cir.), *cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 191 (1979); *United States v. Owen,* 580 F.2d 365, 367–68 (9th Cir.1978).

## V. PROSECUTORIAL USURPATION OF THE GRAND JURY'S ROLE

■ A prosecutor may not deprive a grand jury of the opportunity to evaluate the credibility of witnesses. *United States v. Samango, supra,* 607 F.2d at 884. Appellants contend that the prosecutors here improperly influenced the grand jury and usurped its role by resolving credibility issues.

■ Appellants argue that the government resolved, unfavorably, the issue of the codefendant doctor's credibility. The government was merely responding to an inference of perjury drawn by a grand juror and explaining why it did not request a perjury indictment. The response, if expansive, was necessary.

■ Appellants object that the summary witness said of the absent witnesses, "90% of everything these people told the BATF checks out, so use that as a yardstick." We realize that this was in response to a juror's question about their credibility, as they had testified in exchange for non-prosecution. We also realize that this addressed the morning indictment, not appellants' indictment, which was based on the testimony of different witnesses. But it may have had collateral effects. "Vouching" for witnesses is a poor practice and we have cautioned government counsel not to engage in it. *United States v. Roberts,* 618 F.2d 530, 533–37 (9th Cir.1980), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981).

Appellants contend the prosecutor discouraged grand jurors from reading the transcripts of former testimony. When explaining the summary witness procedure, the prosecutor said that the jurors were free to read them, "but after a while it gets a little tedious."

By itself this remark seems innocuous. But appellants' contention gains considerable force in light of the surrounding circumstances.

A careful analysis of that day's events shows it is extremely doubtful the grand jurors had time to read the transcripts. There is also no indication that they did so. The government claims one juror's question about the codefendant's perjury shows he read a transcript. But the summary witness fully treated the subject matter of this question moments before.

Moreover, the grand jurors may have felt pressured to reach a decision immediately. Earlier, the prosecutor said he had to ask them to decide the morning indictment that day. They did so moments later. Right after the testimony and instructions on the afternoon indictment, the prosecutors gave them the ballot and excused all nonjurors from their presence. They voted within minutes.

One of the factors the court took into account in overturning the indictment in *Samango* was that the prosecutor gave the indicting grand jury numerous former grand jury transcripts and asked them to reach a conclusion within eight days. 607 F.2d at 882–83. Prosecutorial tactics before the grand jury that indicted appellants are in this respect worse.

The summary witness procedure is an economical and expedient means of presenting evidence to a grand jury. But the evidence is necessarily derivative and abbreviated. The prosecutor must not abuse this device by pressuring grand jurors into a precipitous decision or otherwise discouraging them from evaluating the predicate evidence.

Appellants further contend the grand jury was not told it was entitled to hear live testimony of percipient witnesses. The government counters that the grand jury was presumably told of its subpoena powers during its orientation.

■ There is no proof of this, and the orientation took place six months earlier.

If the government avails itself of the summary procedure, it would be better practice to remind the grand jury that it retains the option of calling percipient witnesses.

At the very least, dissatisfied jurors must not be made to feel that producing anything besides summary hearsay is an unnecessary inconvenience. When a juror here expressed qualms over establishing a crucial element of an indictment solely by the hearsay of absent witnesses, the prosecutor's answer was slighting and unresponsive:

> Prosecutor: [The summary witness, agent Heart] said he talked to them and that's what they told them.
>
> Juror: And is that enough to go on?
>
> Prosecutor: If you find that he is telling the truth, I would say in my opinion that is enough.
>
> Juror: I believe Mr. Heart but I don't know the person[s] who gave him the testimony.
>
> Prosecutor: Well, you understand that the standard obviously that you have is not beyond a reasonable doubt. Anything else on mail fraud?

■ The prosecutor's response was also, as appellants complain, affirmatively misleading. It is not sufficient that a government agent is credible as to what absent declarants said. The grand jury must determine whether those declarants, the percipient witnesses of the events underlying the indictment, are sufficiently credible to establish probable cause. The prosecutor here misdirected the grand jurors to bypass a crucial step of their mission.

## CONCLUSION

Not all of the challenged behavior was misconduct. Of that which was, some may not have been deliberate. But as the *Samango* court noted, even unintentional misconduct can cause improper influence and usurpation of the grand jury's role. 607 F.2d at 882.

Prosecutorial behavior in this case resembles that in *Samango*. That court, however, was reviewing a trial judge's dismissal of an indictment. Here, in contrast, we review a trial court's exercise of its discretion to uphold an indictment, with resulting convictions based on overwhelming evidence of guilt. We affirm appellants' convictions.

■ Future cases may well face us in a different posture. The government is on notice that this court will not brook behavior that degrades the grand jury into a rubber stamp, and the testing of the prosecutor's evidence into an empty ritual.

> The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge....
>
> ... The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away ....

*Stirone v. United States,* 361 U.S. 212, 218–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960) (footnote omitted), *quoted in United States v. Samango, supra,* 607 F.2d at 884.

The many earnest and discerning questions of this grand jury manifest the vitality of this ancient institution. Prosecutors owe it respect, not condescension, manipulation, or substituted judgment.

We have no wish to hinder the sound exercise of the broad discretion prosecutors must have to execute their law enforcement duties. They enjoy great latitude in selecting evidence, witnesses, and methods of presentation for the grand jury.

But their great power carries a concomitant responsibility. When a summary procedure is combined with overbearing tactics and misleading instructions, the grand jury as a screening device at some point becomes a nullity.

■ "A line must be drawn beyond which prosecutor's control over a cooperative grand jury may not extend." *United States v. Samango, supra,* 607 F.2d at 882. The "cumulative effect of [prosecutorial] errors and indiscretions," *id.* at 884, came uncomfortably close to crossing that line here. Prosecutors must stay well back of it

in the future. It is only because of the overwhelming evidence of guilt that was presented to the grand jury, and our belief that this opinion will have the requisite prophylactic effect, that we affirm.

*Affirmed.* The mandate will issue now. The district judge should reconsider the release of the defendants on bail.