UNITED STATES of America,
Plaintiff-Appellee,

v.

Sammy Herrera VENEGAS and Eddie
Adrian Vindiola,
Defendants-Appellants.

Nos. 84–1293, 84–1298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1986.

Decided Sept. 23, 1986.

Thomas Volk, Scofield & Volk, Ronald W. Rogers, Sacramento, Cal., for defendants-appellants.

Before MERRILL, CHOY, and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

The appellants are Sammy Herrera Venegas and Eddie Adrian Vindiola. Upon entry of conditional guilty pleas, they were convicted of violations under 18 U.S.C. § 1962 and now appeal on the single issue that the superseding indictment that was the basis of the conviction should have been dismissed because it was obtained by prosecutorial misconduct before the grand jury. The trial court denied the motion to dismiss. We find no merit whatsoever to the appellants' contention, and we affirm.

The grand jury has historically been independent of both the prosecution and the courts, *In re Grand Jury Investigation of Hugle,* 754 F.2d 863, 864 (9th Cir.1985), and as an independent entity the grand jury has broad powers to investigate matters before it, *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 423–24, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1983). Because of separation of powers concerns, courts very rarely intrude on the conduct of grand jury proceedings. *United States v. Cederquist,* 641 F.2d 1347, 1352–53 (9th Cir.1981). Under limited circumstances, however, a court may dismiss an indictment for prosecutorial misconduct before the grand jury based on due process grounds, *see, e.g., United States v. Basurto,* 497 F.2d 781, 785–86 (9th Cir.1974), or the court's inherent supervisory powers, *see, e.g., United States v. Samango,* 607 F.2d 877, 881 (9th Cir. 1979); *Basurto,* 497 F.2d at 793–94 (Hufstedler, J., concurring specially). A defendant who challenges the indictment on either ground bears a heavy burden to demonstrate that the prosecutor engaged in flagrant misconduct deceiving the grand jury

Nancy L. Simpson, U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

or significantly impairing its exercise of independent, unbiased judgment. *United States v. De Rosa,* 783 F.2d 1401, 1405, 1406 (9th Cir.1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3282, 91 L.Ed.2d 57 (1986); *United States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir.), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983). Moreover, the defendant must show that the prosecutorial misconduct prejudiced him. *Al Mudarris,* 695 F.2d at 1186–87; *United States v. Owen,* 580 F.2d 365, 367 (9th Cir.1978). That burden has not been met here.

Appellants' first argument is that the grand jurors' discussions with the prosecutors and witnesses about breaking up the Nuestra Familia (NF), to which appellants belong, were beyond the scope of the investigation into the gang's past criminal activity and led the grand jurors to return the indictment as a means of quelling future activity by the NF. The prosecutors asked ex-gang members how they would break up the NF, since state prison authorities were unable to control the gang's growth, and those inquiries in turn generated questions from and discussions with the grand jurors about breaking up the NF by convicting members of the NF in federal court and then transferring them to federal prisons where they would be unable to organize. In addition, appellants claim the prosecutors elicited information to shock the grand jurors into returning the indictment; ex-gang members who testified told the grand jurors they did so at great risk to their lives because the NF is a radical and dangerous group.

■ If grand jurors have questions why indictments are necessary in a case and what the consequences of the indictments would be, they are entitled to ask the prosecution for an explanation. The grand jurors' conversations about the need to expend government resources to investigate the NF also demonstrate that the grand jurors carefully and consciencously carried out their duties, retaining a critical perspective on the investigation. *See United States v. Sears, Roebuck & Co.,* 719 F.2d 1386, 1393 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984). The grand jurors were further advised to confine their investigation to the evidence properly before them. Finally, appellants do not allege that there is otherwise insufficient evidence available to obtain an indictment.

Even if some of the questioning of the witnesses was inappropriate, we would not dismiss the indictment. Of the approximately two hundred witnesses who testified over the course of the eleven-month investigation, only six were former NF members whose testimony is at issue. Their testimony consumes approximately 1500 pages of the 9000–page grand jury transcript. In each case, only a few lines out of one or two days testimony concerned breaking up the NF by removing members from state prisons that were unable to control the gang to federal prisons scattered throughout the country. Further, the six witnesses testified in the middle of the investigation, so that the effect of their testimony was diluted by the testimony given before and after them. *Cf. id.* at 1392 (witness was fifteenth of twenty witnesses over eighteen months and his testimony lasted only one day; no dismissal of indictment).

■ Appellants next contend that the superseding indictment must be dismissed because the prosecutors and grand jurors held conversations off the record on ways to break up the NF, punishments appellants might receive if convicted, and the purpose of indicting gang members who were already sentenced to life imprisonment. Federal Rule of Criminal Procedure 6(e)(1) states that "[a]ll proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device. An unintentional failure of any recording to reproduce all or any portion of a proceeding shall not affect the validity of the prosecution." The rule was intended to eliminate questionable off-the-record comments by the prosecution, *United States v. Shober,* 489 F.Supp. 393, 408 n. 11 (E.D.Pa.1979); 8

J.W. Moore, *Moore's Federal Practice* ¶ 6.04[8], at 6–96 (2d ed. 1985), but we have found no case law construing it. We find no violation in this case. Any off-the-record comments made were brief, and once the prosecutors realized they could not speak off the record, they summarized the contents of their discussions on the record. Appellants have shown no prejudice from any of these comments, and in the context of the lengthy proceedings, the comments were not material to the grand jury's decision to return the indictment.

■ Appellants also argue that selective admonitions by the prosecutors on the use of particular testimony improperly biased the grand jury. Specifically, these admonitions warned the grand jurors not to consider whether defendants were already incarcerated, the extent of the NF's ability to organize within the state prisons, how to break up the NF, and what kind of punishments defendants would receive if convicted. None of these admonitions was improper. Appellants' argument is that the admonitions were interspersed at strategic intervals so as to stress certain points and bias the grand jurors. As a practical matter, the grand jurors knew the prosecutors convened them in order to indict the defendants, and the fact that the prosecutors may have conveyed that impression in a not improper manner does not require dismissal of the indictment. *See United States v. McKenzie*, 678 F.2d 629, 632 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982) (citing *Cederquist*, 641 F.2d at 1353). By simply advising the grand jury of its duty in investigating the case, the prosecutors did not overstep their bounds in conducting the proceedings. *See Sears, Roebuck & Co.*, 719 F.2d at 1393–94; *McKenzie*, 678 F.2d at 633.

■ Finally, appellants claim that the grand jury was impermissibly converted into an arm of the prosecution. They argue that the prosecution's repeated explanations of why it was taking so long to obtain permission from the United States Attorneys' Office to obtain an indictment impressed upon the grand jurors that they were merely cogs in a complicated and mechanical process. We conclude that the prosecutors' mere explanations of the procedures for obtaining an indictment did not convert the grand jury into a rubber stamp. *See Al Mudarris*, 695 F.2d at 1188. The judge had initially told the grand jurors that they were to make an independent evaluation of the prosecution's evidence. They also asked questions critical of the prosecution's case throughout the investigation.

The district court's denial of the motions to dismiss the superseding indictments is AFFIRMED.