UNITED STATES of America,
Plaintiff-Appellee,

v.

James E. BUSHER,
Defendant-Appellant.

No. 85–1122.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1986.

Decided May 26, 1987.

George J. Mendelson, Rockville, Md., for defendant-appellant.

Mervyn Hamburg, Washington, D.C., for plaintiff-appellee.

Before WRIGHT, SNEED and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

We review the conviction and order of forfeiture entered against appellant, James E. Busher, for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (1982) (RICO).

## Facts

Busher owns 92 percent of ATL, Inc., a Hawaii corporation engaged in the construction business. ATL's principal client was the U.S. Department of Defense. Busher used a Nevada corporation, J.W. Contracting Co., as a fictitious subcontractor, receiving purported subcontracting payments from ATL. This and similar practices got Busher into trouble. In January 1984, Busher was advised that he was under investigation for submitting false claims to the government, conspiracy to defraud the government and mail fraud, all in connection with ATL's contracts with the Department of Defense. In February and March, Busher testified on these matters before the grand jury, which later expanded its investigation to include income tax evasion and submission of false tax returns.

Busher was indicted in September 1984 and, after a jury trial, was convicted of

violating RICO; submitting false statements to the government, 18 U.S.C. § 1001 (1982); presenting false claims to the government, 18 U.S.C. § 287 (1982); mail fraud, 18 U.S.C. § 1341 (1982); tax evasion; 26 U.S.C. § 7201 (1982), and submitting false income tax returns, 26 U.S.C. § 7206(1) (1982). As a result of his RICO conviction, Busher forfeited to the United States his entire interest in ATL, J.W. Contracting and certain Nevada real estate purchased through J.W. Contracting. In addition, Busher was sentenced to four years imprisonment on the RICO counts, to run concurrently with two years on the tax charges and two years on the false statements, false claims and mail fraud charges.

## Issues

Busher levels three challenges against his conviction and forfeiture. First, he claims that the prosecutor's failure to inform him of all of the charges for which an indictment was sought prior to his testimony before the grand jury amounted to prosecutorial misconduct. Second, he contends that RICO may not be used to convert simple Internal Revenue Code violations into racketeering charges. Finally, he argues that forfeiture of his entire interest in ATL, J.W. Contracting and the Nevada real estate is so disproportionate to the criminal conduct for which he was convicted as to violate the eighth amendment.

## Discussion

### 1. Prosecutorial Misconduct

Busher asserts that the district court should have dismissed the indictment because the prosecutor failed to advise him of all of the charges for which indictment was sought, and failed to follow Justice Department guidelines for bringing RICO cases. Although courts have the power to dismiss an indictment both on due process grounds and as a part of their inherent supervisory power over the administration of justice, the power is exercised sparingly. *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *United States v. Al Mudarris*, 695 F.2d 1182,

1185 (9th Cir.), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983). A defendant challenging an indictment carries a heavy burden: He must demonstrate that the prosecutor engaged in flagrant misconduct that deceived the grand jury or that significantly impaired its ability to exercise independent judgment. *De Rosa*, 783 F.2d at 1405; *Al Mudarris*, 695 F.2d at 1185. Busher has not carried this burden.

The prosecutor was not required to tell Busher which crimes the grand jury was investigating at the time he was called to testify. *See United States v. Washington*, 431 U.S. 181, 188–89, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977); *United States v. Swacker*, 628 F.2d 1250, 1253 (9th Cir. 1980). Busher's claim that the prosecutor misled him, causing him to withhold exculpatory evidence, is unavailing because "[a]n appellate court may not attack an indictment on the ground of incompetent or inadequate evidence," *Al Mudarris*, 695 F.2d at 1185, and the prosecutor had no duty to present exculpatory evidence to the grand jury. *Id.* His allegations that the prosecutor's tactics biased the grand jury are completely unsubstantiated.

Busher's separate argument that the prosecutor disregarded Justice Department guidelines for bringing RICO prosecutions is similarly unpersuasive. Even if the Justice Department does not normally recommend RICO prosecutions under these circumstances, the decision to prosecute an apparent violation of the law can hardly be deemed flagrant misconduct. The U.S. Attorneys' manual, on which Busher relies, states that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice." U.S. Department of Justice, *United States Attorneys' Manual* § 1–1.100 (1984). Busher therefore is not entitled to

rely on it. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).[1]

### 2. Propriety of RICO Charges

■ Busher argues that RICO charges based on the mailing of two fraudulent federal income tax returns were improper because Congress deliberately omitted tax fraud from the list of predicate acts that may give rise to RICO violations. 18 U.S.C. § 1961 (1982). However, "any act which is indictable under" 18 U.S.C. § 1341 may serve as a predicate act for purposes of RICO. 18 U.S.C. § 1961 (1982). We have previously held that mailing fraudulent tax returns is indictable as mail fraud under section 1341. *United States v. Miller,* 545 F.2d 1204, 1216 n. 17 (9th Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977); *see United States v. Condo,* 741 F.2d 238, 239 (9th Cir.1984), *cert. denied,* 469 U.S. 1164, 105 S.Ct. .924, 83 L.Ed.2d 936 (1985). It follows that such violations can serve as predicate acts of racketeering under RICO.

1. *But see Cubanski v. Heckler,* 781 F.2d 1421, 1426–29 (9th Cir.1986), *cert. granted sub nom. Bowen v. Kizer,* — U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987).

2. The holding of *Marubeni*—that criminal forfeiture under RICO was limited to racketeering income invested "in an enterprise"—was rejected in *Russello v. United States,* 464 U.S. 16, 22, 29, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983). The Supreme Court's decision did not, however, bear on our observation that section 1963 could produce disproportionate penalties.

3. Courts have traditionally exercised an important role in preventing unduly harsh applications of forfeiture statutes. Judicial construction of statutes providing for forfeiture of land used to operate illegal stills is a notable example. One such statute requires forfeiture of "all the right, title, and interest of [a] person [operating an illegal still] in the lot or tract of land on which the distillery is situated." 26 U.S.C. § 5615(3)(C) (1982). In interpreting this and predecessor still forfeiture statutes, the courts have consistently avoided excessively and fortuitously harsh results by limiting forfeiture to land and structures actually used for the distillery or in connection with the use of the distillery. In *United States v. Certain Piece of Land,* 25 Fed.Cas. 366 (D.Cal.1870), the court refused

### 3. Forfeiture

The jury found that Busher's interests in ATL, J.W. Contracting and the Nevada real estate were subject to forfeiture. Busher does not challenge the jury's finding that these interests were forfeitable under RICO. 18 U.S.C. § 1963 (1982). Rather, he contends that forfeiture of his entire interest in these properties is so grossly disproportionate to the crimes for which he was convicted that it violates the eighth amendment's prohibition against "excessive fines ... [and] cruel and unusual punishments." U.S. Const., amend. VIII.

In *United States v. Marubeni America Corp.,* 611 F.2d 763, 769 n. 12 (9th Cir. 1980), we noted that section 1963 could "be read to produce penalties shockingly disproportionate to the offense" committed.[2] In *Marubeni,* we left to another day consideration of the statutory and constitutional issues raised by a potentially disproportionate forfeiture under RICO. *Id.* That day is here.[3]

### A. Section 1963

■ Section 1963 is purposely broad.[4] At the time Busher committed the acts for

to order forfeiture of the entire tract of land stating:

> The operation of such a law would not only be harsh but unequal—for it would make the amount of the forfeiture depend, not on the value of the distillery establishment and the presumed magnitude of its operations, but upon the accidental circumstance that the illicit distiller happened to own a large tract, on the corner of which a still, perhaps of insignificant proportions, was erected.

*Id.* at 366; *see United States v. Elliott Hall Farm,* 42 F.Supp. 235, 239 (D.N.J.1941).

4. The purpose of RICO was "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." *Russello,* 464 U.S. at 26, 104 S.Ct. at 302 (1983); *see also id.* at 27 (citing S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969); 116 Cong. Rec. 819 (1969) (remarks of Senator Scott); *id.* at 591–92 (remarks of Senator McClellan)). Section 1963 is the first modern statute to impose forfeiture as a criminal sanction directly upon an individual defendant rather than through a separate in rem proceeding against property involved in criminal conduct. *United States v. Huber,* 603 F.2d 387, 396 (2d Cir.1979) (citing S.Rep. No. 617, 91st Cong., 1st Sess. 80 (1969)), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

which he was convicted, section 1963(a) provided that a person convicted under section 1962—the substantive provision of RICO—"shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in ... any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." 18 U.S.C. § 1963(a) (1982).[5] Section 1963 was designed to totally separate a racketeer from the enterprise he operates. *See Russello,* 464 U.S. at 28, 104 S.Ct. at 303. Thus, forfeiture is not limited to those assets of a RICO enterprise that are tainted by use in connection with racketeering activity, but rather extends to the convicted person's entire interest in the enterprise. *United States v. Washington,* 797 F.2d 1461, 1477 (9th Cir.1986); *United States v. Anderson,* 782 F.2d 908, 917–18 (11th Cir.1986); *United States v. Ginsburg,* 773 F.2d 798, 801 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *United States v. Cauble,* 706 F.2d 1322, 1349–50 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).

■ Moreover, the substantive provisions of RICO, to which section 1963 is keyed, cover an extraordinarily broad range of activities. Forfeiture under RICO can thus result from very serious, as well as from more trivial, violations of the law.[6] At one end of the spectrum is the paradigmatic racketeering enterprise: an organization deriving almost all its income from serious criminal conduct. At the other end of the spectrum is conduct by an otherwise legitimate business, consisting of as few as two isolated predicate acts of relatively minor consequence, but which nevertheless amount to a RICO violation. Forfeiture of the enterprise where the conduct in question falls close to this end of the spectrum may well take more than the constitution allows.[7]

## B. The Eighth Amendment

■ Forfeiture under section 1963(a) is clearly "punishment" as that term is used in the eighth amendment. *See* S.Rep. No. 617, 91st Cong., 1st Sess. 124 (1969) (a forfeiture proceeding under section 1963 is "in personam" against the defendant who is the party to be *punished*) (emphasis added); *Marubeni,* 611 F.2d at 765; *Ginsburg,*

---

5. Section 1963(a) was amended on October 12, 1984 as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, § 302, 1984 U.S. Code Cong. & Admin. News (98 Stat.) 2040. The purpose of this amendment was to clarify that the term "any interest" used in section 1963 extended to proceeds, income, or profits derived from a pattern of racketeering activity. H.R.Rep. No. 1030, 98th Cong., 2d Sess., 194–95, 199–200, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3377–78, 3382–83. The amendment reaffirmed the Supreme Court's earlier holding that the prior version of section 1963 extended to profits and proceeds of racketeering activity. *Russello,* 464 U.S. at 22. In *Russello,* the Court rejected the position of this circuit that forfeiture under section 1963(a)(1) was limited to interests in a RICO enterprise. *See United States v. Marubeni America Corp.,* 611 F.2d 763, 766–67 (9th Cir.1980). Therefore, we will assume that, both at the time of Busher's illegal conduct and at the time of his conviction, forfeiture under section 1963 extended to profits and proceeds derived from a pattern of racketeering activity.

6. Section 1962, containing RICO's substantive prohibitions, is violated by the investment in, acquisition or maintenance of, or the conduct-

ing of or participating in, an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(a)-(c) (1982). Violation of section 1962 can result from the commission of two predicate acts of racketeering within a ten year period. These predicate acts of racketeering include not only such traditionally heinous acts of organized crime such as murder, kidnaping, arson, bribery and extortion, but also simple mail or wire fraud. 18 U.S.C. § 1961(1) (1982).

7. The problem of forfeiture of an entire enterprise is essentially limited to the situation where the convicted defendant owns substantially all of the stock of a corporation, or where the enterprise is a sole proprietorship. This is so because under section 1963 only the *defendant's interest* in the enterprise is forfeitable, not the enterprise itself. At the same time, it is the law of this circuit that the enterprise may not also be the defendant in an action brought under section 1962(c)—*i.e.,* where the claim is that the defendant has conducted the affairs of the enterprise through a pattern of racketeering activity. *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1398 (9th Cir.1986). Thus, only where the culpable person owns the entire enterprise will it be subject to complete forfeiture for violation of RICO.

# 1414

773 F.2d at 800; *cf. Ingraham v. Wright,* 430 U.S. 651, 666–67, 97 S.Ct. 1401, 1409–10, 51 L.Ed.2d 711 (1977) (describing wide variety of criminal punishments to which the eighth amendment has been applied). Moreover, the Supreme Court has held that the eighth amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983).

*Solem* noted that the prohibition against disproportionate punishment is firmly rooted in both our common law and constitutional history: "When the Framers of the Eighth Amendment adopted the language of the English Bill of Rights, they also adopted the English principle of proportionality." *Id.* at 285–86, 103 S.Ct. at 3007 (footnote omitted). The Supreme Court has consistently applied this principle "for almost a century." *Id.* at 286, 103 S.Ct. 3008.[8]

Busher claims that the forfeiture of his entire interests in ATL, J.W. Contracting and the Nevada real estate is grossly disproportionate to the offenses for which he was convicted. He contends that, by and large, the scope of ATL's business activity was legitimate. Busher points out that ATL performed 14 defense contracts totaling approximately $27 million. Only 3 of those contracts were the subject of the indictment brought against defendants, and appellant claims the total dollar amount of the fraudulent conduct for which he was convicted—including tax evasion—amounted to only $335,000. Thus, he argues, forfeiture of his entire 92 percent interest in ATL—a corporation worth approximately $3 million—plus all of J.W. Contracting and the Nevada real estate, is so excessive as to violate the eighth amendment.

■ Our review of the relevant Supreme Court cases, particularly *Solem,* convinces us that Busher has raised legitimate concerns as to the constitutionality of the forfeiture ordered in this case. RICO's forfeiture provision affords the trial court no discretion. Once the jury determines that property was acquired, maintained or operated in violation of section 1962, it must find forfeitable the defendant's entire interest in that property. 18 U.S.C. § 1963(a). Moreover, the statute gives the district judge no authority to exclude from the forfeiture order any of the property the jury finds is covered by the liberal language of section 1963(a). *See United States v. Godoy,* 678 F.2d 84, 88 (9th Cir.1982), *cert. denied,* 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983). But RICO's breadth and inflexibility counsels caution, for "no penalty is per se constitutional." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009–10. Since RICO's forfeiture provision is quite literally without limitation, it may well exceed constitutional bounds in any particular case.[9]

**8.** The Court first endorsed the principle of proportionality as a constitutional limitation on punishment in *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). In *Weems,* the defendant had been sentenced to 15 years at hard labor with permanent civil disabilities for falsifying a public document. The Court held that the punishment was "cruel in its excess of imprisonment," *id.* at 377, 30 S.Ct. at 553, as well as in its nature and restrictions. More than fifty years later, in *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Court reaffirmed the principle of proportionality and added the requirement that the excessiveness of a punishment be determined not in the abstract, but in light of the specific nature of the crime for which the defendant was convicted. *Robinson* invalidated a ninety-day sentence for the crime of being addicted to narcotics. The Court observed that although "imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual ... the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Id.* at 667, 82 S.Ct. at 1421.

**9.** In *United States v. Grande,* 620 F.2d 1026 (4th Cir.), *cert. denied,* 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 and 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 146 (1980), the Fourth Circuit held that forfeiture under RICO is "not cruel and unusual in the constitutional sense." *Id.* at 1039. The court appears to have concluded that forfeiture under section 1963 is per se proportional because "the magnitude of [RICO] forfeiture is directly keyed to the magnitude of defendant's interest in the enterprise conducted in violation of law." *Id.*

We believe the Fourth Circuit misapplied the eighth amendment's requirement of proportion-

Even though the statute provides no discretion, the district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds. We therefore hold that where, as here, plaintiff makes a prima facie showing that the forfeiture may be excessive, the district court must make a determination, based upon appropriate findings, that the interest ordered forfeited is not so grossly disproportionate to the offense committed as to violate the eighth amendment.

The district court in this case did not take these constitutional considerations into account in fashioning its forfeiture order, and we therefore remand for it to do so. Because the eighth amendment, as interpreted in *Solem*, embodies fluid concepts that vary in application with the circumstances of each case, there is relatively little guidance we can give the district court in making its determination. We do, however, offer the following observations.

The district court must, consistent with *Solem*, consider (1) the harshness of the penalty [10] in light of the gravity of the offense; (2) sentences imposed for other offenses in the federal system; and (3) sentences imposed for the same or similar offenses in other jurisdictions. 463 U.S. at 292, 103 S.Ct. at 3010. In comparing the penalty imposed to the gravity of the offense, the district court may consider the circumstances surrounding the defendant's criminal conduct. *See Enmund v. Florida*, 458 U.S. 782, 797–801, 102 S.Ct. 3368, 3376–78, 73 L.Ed.2d 1140 (1982) (examining the circumstances of defendant's crime in great detail). More particularly, *Solem*

noted that, in considering the gravity of the offense, a court should look both at the harm suffered by the victim and the defendant's culpability. 463 U.S. at 292, 103 S.Ct. at 3010.

In considering the harm caused by defendant's conduct, it is certainly appropriate to take into account its magnitude: the dollar volume of the loss caused, whether physical harm to persons was inflicted, threatened or risked, or whether the crime has severe collateral consequences, *e.g.*, drug addiction. *See Solem*, 463 U.S. at 293, 103 S.Ct. at 3011. In addition, the court may consider the benefit reaped by the convicted defendant. However, the forfeiture is not rendered unconstitutional because it exceeds the harm to the victims or the benefit to the defendant. After all, RICO's forfeiture provisions are intended to be punitive. The eighth amendment prohibits only those forfeitures that, in light of all the relevant circumstances, are *grossly* disproportionate to the offense committed.

With regard to the defendant's culpability, *Solem* observed that, among other things, the defendant's state of mind and his motive in committing the crime should be considered.[11] 463 U.S. at 293, 103 S.Ct. at 3011. In the context of RICO, the court may consider the degree to which the enterprise operated by the defendant is infected by criminal conduct. The court should be reluctant to order forfeiture of a defendant's entire interest in an enterprise that is essentially legitimate where he has committed relatively minor RICO violations

ality. That the statute ties the amount forfeited to a defendant's stake in an enterprise that violated the law merely states the issue. As we have previously noted, RICO's impressive breadth, and the interplay of its substantive and punitive provisions, may result in forfeitures of vast amounts of property as a result of relatively minor offenses. In any one case the amount forfeited may have no relationship whatsoever to the severity of the wrong committed.

10. The penalty to be considered is the total punishment imposed for the offense, which would include not only the forfeiture but any incarceration, fines or probation imposed by the district court.

11. In considering a challenge to the imposition of the death penalty to a murder accomplice, the Court defined the degree of culpability in terms of the defendant's "intentions, expectations, and actions." *Enmund*, 458 U.S. at 800, 102 S.Ct. at 3378. Perhaps the most elegant disproportionality formula was offered by Justice Powell in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980): "The inquiry focuses on whether a person deserves such punishment, not simply on whether punishment would serve a utilitarian goal." *Id.* at 288, 100 S.Ct. at 1146 (dissent).

not central to the conduct of the business and resulting in relatively little illegal gain in proportion to its size and legitimate income. Conversely, if illegal activity accounts for all or almost all of an enterprise's activity, or an interest in an enterprise was acquired entirely or almost entirely with ill-gotten funds, it would not normally violate the eighth amendment to order forfeiture of all of defendant's interest in that enterprise.[12]

Consideration of these factors, reviewed for abuse of discretion, should ensure that no forfeiture is so disproportionate to the offense committed as to violate the eighth amendment. If, on remand in this case, the court finds to the contrary, it must limit the forfeiture to such portion of the interest as it deems consistent with these principles; or it may condition the forfeiture upon payment of such sum or relinquishment of such other property as seems just under the circumstances;[13] or it may limit or eliminate other punishment it would otherwise impose so as to bring the total sanction within constitutional boundaries.

This is, admittedly, not an easy line to draw; the eighth amendment does not provide a bright line separating punishment that is permissible from that which is not. But a court may not turn its back on a constitutional constraint simply because it is difficult to apply.

When all is said and done, the district court may well conclude that its original forfeiture order was proper; we express no view on that score. We hold only that when the defendant raises a legitimate claim that the full force of permissible forfeiture under RICO may be grossly disproportionate to the offense committed, potentially violating the eighth amendment, the district court must discharge its constitutional function by giving the matter careful

scrutiny. Here the district court did not. We remand that it may do so.

### Conclusion

We affirm defendant's conviction but remand for a determination by the district court whether the forfeiture order was so grossly disproportionate to the offense committed as to violate the eighth amendment and, if so, for such action as the district court deems appropriate to avoid such constitutional infirmity.

---

**12.** The factors listed are not exclusive. For example, one commentator has suggested that "settled principle[s] of Anglo-American justice" prohibit monetary penalties that "threaten the defendant's economic viability." Jeffries, *A Comment on the Constitutionality of Punitive Damages,* 72 Va.L.Rev. 139, 154 (1986). The district court may consider this and other

factors it deems appropriate for purposes of determining proportionality.

**13.** In *Huber,* the Second Circuit approved an order of conditional forfeiture, giving the convicted defendant the option to redeem his corporations by payment of cash or other property worth $100,000. 603 F.2d at 391.